Roberto **TORRES** and Walter Dinger, Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF LABOR** and Martin P. Catherwood, Industrial Commissioner, Defendants,

United States of America, Intervenor-Defendant.

**No. 70 Civ. 2408.**

United States District Court, S. D. New York.

Argued Nov. 23, 1970.

Decided Jan. 7, 1971.

Dennis R. Yeager, New York City (Douglas D. Broadwater, Emilio P. Gautier, Paul G. Chevigny, Jonathan Weiss, Christopher H. Clancy, George Cooper, New York City, on the brief), for plaintiffs.

Brenda Soloff, Asst. Atty. Gen. of New York (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for New York State Department of Labor and Martin P. Catherwood.

Daniel Riesel, Asst. U. S. Atty., S. D. New York (Whitney North Seymour, Jr., U. S. Atty., S. D. New York, Joseph D. Danas, Asst. U. S. Atty., Louise F. Freeman, H. A. Kelly, Attys., U. S. Dept. of Labor, Robert N. Ford, Atty., U. S. Dept. of Justice, on the brief), for intervenor-defendant United States.

Robert Morgan, Atty. Gen. of N. C., and Ralph Moody, Deputy Atty. Gen., submitted a brief amicus curiae for North Carolina.

Before HAYS, Circuit Judge, McLEAN and LASKER, District Judges.

HAYS, Circuit Judge:

The complaint in this action alleges the deprivation of rights secured to the plaintiffs by the Fourteenth Amendment to the United States Constitution and by parts of the Social Security Act of 1935, 42 U.S.C. § 501 et seq. (1964). Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 (1964) declaring N.Y. Labor Law §§ 597, 598 and 620 (McKinney 1965) to be in violation of the Fourteenth Amendment and the Social Security Act "insofar as they authorize the suspension or termination of unemployment compensation benefits without a prior hearing * * *." Plaintiffs also pray for the issuance of preliminary and permanent injunctions against the New York State defendants to prevent them from using these statutory procedures and to require prior hearings before termination of the unemployment compensation benefits of those who have been determined to be entitled to such benefits pursuant to N. Y. Labor Law § 597 (McKinney 1965).

The action was brought as a class action. In a memorandum opinion, 318 F. Supp. 1313, dated July 21, 1970, Judge Lasker held that the case was not moot as to plaintiff Torres or the other members of the class, that Torres was a proper representative of the class, and that it would be inappropriate to grant a preliminary injunction. In a further memorandum opinion dated September 14, 1970, Judge Lasker granted plaintiffs' motion for the convening of this three-judge statutory court pursuant to 28 U.S.C. § 2281 (1964).

Unemployment compensation was designed to assist those who, although generally attached to the labor market, are unable, through no fault of their own, to secure employment. N.Y. Labor Law § 501 (McKinney 1965). If the program is in compliance with provisions of federal law, the federal government pays the costs of administration. 42 U.S.C. §§ 502, 503 (1964). Benefits are paid entirely out of a fund maintained solely by contributions, interest and penalties paid by employers. N.Y. Labor Law § 550 (McKinney 1965). Employers who pay $300 or more in wages in any calendar quarter must contribute to the fund, N.Y. Labor Law § 560(1) (McKinney 1965); the basic rate of contribution is 2.7% of all wages paid. N.Y. Labor Law § 570, subd. 1 (McKinney Supp. 1970). Actually, an employer's rate will usually range from 0.2% to 3.2% depending on the amount of benefits actually paid his former employees. N.Y. Labor Law § 581 (McKinney 1965). Separate accounts are maintained as for-

malities to determine this basic contribution rate, but all moneys in the fund are pooled and available to pay benefits to any entitled individuals. There is also a General Account to which all moneys paid which are later determined to have been paid in error are debited. N. Y. Labor Law § 577, subd. 1(b) (4) (McKinney 1965). When the General Account is in danger of depletion, a subsidiary contribution is imposed uniformly on covered employers, N.Y. Labor Law § 577(2) (McKinney Supp.1970) ranging from two tenths of one percent to one percent of wages paid during the period.

In order for a claimant to be entitled to benefits, he must meet the requirements of N.Y. Labor Law § 590(1) (McKinney 1965):

> "A claimant shall be entitled to accumulate effective days for the purpose of benefit rights only if he has complied with the provisions of this article regarding the filing of his claim, including the filing of a valid original claim, registered as totally unemployed, reported his subsequent employment and unemployment, and reported for work or otherwise given notice of the continuance of his unemployment."

A "valid original claim" is defined as follows:

> " 'Valid original claim' is a claim filed by a claimant who meets the following qualifications:
>
> (a) is able to work, and available to work;
>
> (b) is not subject to any disqualification or suspension under this article;
>
> (c) his previously established benefit year, if any, has expired;
>
> (d) has had at least twenty weeks of unemployment in the fifty-two week period preceding the filing of such claim;
>
> (e) has earned remuneration averaging at least thirty dollars per week in at least twenty weeks of employment in such fifty-two

week period." (N.Y. Labor Law § 527(1) (McKinney Supp.1970)).

The disqualifications referred to in § 527(1) (b) are voluntary separation from previous employment, refusal of employment, and dismissal from previous employment for misconduct or a criminal act. N.Y. Labor Law § 593 (McKinney 1965). Section 597(1) provides for initial determinations:

> "The validity of the claim and the amount of benefits payable to the claimant shall be determined in accordance with the regulations and procedure established by the commissioner and, when such determination is issued by the commissioner, it shall be deemed the initial determination of the claim."

The regulations promulgated at 12 N. Y.C.R.R. Part 473 (1970) and the Department of Labor Field Operations Manual (hereafter cited as Manual) state the procedures for determining initial benefit eligibility. The Manual provides that when a claimant applies for unemployment insurance, he fills out a form entitled "Original Claim for Benefits" (Form LO–330) and is interviewed by an employee of the Department. This interview seeks to determine if the claim is a "valid original claim." Manual §§ 2001, 2010, 2062. Section 2001 through 3235 of that Manual provide for extensive investigation prior to an initial determination. If the claim is accepted for filing, the claimant is assigned a day of the week to report to the unemployment insurance office, Manual § 2155; when he does so, the Department issues a "Determination of Entitlement," Form LO–333 Manual § 3001. On the back of this form is the "Claim for First Benefit Payment" which is signed by the claimant and which authorizes the first payment of benefits to the recipient. Thus, during one week for investigation, and a one week waiting period, N.Y. Labor Law § 590(9) (McKinney 1965) no payments are made. If the claimant is found to be entitled, he receives his first check by mail at the end of the third week. Each

week thereafter, the claimant must report to the insurance office and certify that he was unemployed during the previous week, that he was ready, willing and able to work, and that he notified the office of all job offers which he received. Manual §§ 5030–5042. He must list each day of the week on which he was employed or unavailable for or incapable of work or in receipt of holiday or vacation pay. He must also comply with the requirement that he report periodically to the State Employment Service, N.Y. Labor Law § 596(1), (2) (McKinney 1965); 14 N.Y.C.R.R. §§ 473.1, 473.2, 473.3 (1970); Manual § 5046. At certain intervals he is questioned in more detail concerning his employment prospects. Manual §§ 5060 et seq.

At any step in these proceedings either before or after payment has begun the eligibility of a claimant may be called into question. He is interviewed with respect to any new information received. Any contested determination may be the basis of a request for redetermination or a hearing. If benefits are allowed, the employer may protest, and if benefits are disallowed, the claimant may protest. N.Y. Labor Law § 620 (McKinney 1965). In either case, payments are suspended pending the holding of a full scale hearing. Even if the hearing Referee allows benefits to the claimant, they will not be paid if an appeal is taken until an Appeal Board affirms the decision. An appeal to the courts is permitted, but pending determination of an employer appeal benefits are payable. N.Y. Labor Law § 598 (McKinney 1965). Where a claimant is held to be entitled to benefits, payments are made retroactively to the date of suspension.

When it is determined that a claimant who has received payments was not entitled to do so, the amount paid to him is recoverable if he "wilfully made a false statement or representation" to obtain benefits. N.Y. Labor Law § 594 (McKinney Supp.1970). Plaintiffs contend that the Department has interpreted this provision broadly in that the Manual, at

§ 2813(c) n. 2, states that it "may be applied to *any* overpayment which results from invalidation of the original claim * * *." The Department recovers approximately 50% of the overpayments declared recoverable under this provision. These monies are credited to the General Account. N.Y. Labor Law § 577(1) (a) (5) (McKinney 1965).

Plaintiff Roberto Torres filed an original claim on January 27, 1970. He stated at that time that his separation from work was due to "Lay-off-no-work," and the initial determination that he had filed a valid original claim was based solely on this statement since the Request for Employment and Wage Data mailed to the employer had been sent to an incorrect address. After the waiting period payments were made in the amount of $65 a week with plaintiff certifying weekly to his eligibility. The employer's response to the re-mailed form did not arrive until March 31; on March 30, however, the employer telephoned the local insurance office and stated that the reason for Torres' discharge was his repeated lateness and failure to follow orders, and that the employer was challenging the payment of benefits. The claimant was interviewed on March 31 and admitted that he had reported late "a few times." The local insurance office issued redetermination pursuant to N.Y. Labor Law § 597(3). These redeterminations disqualified plaintiff from benefits, effective January 26, 1970, on the ground that he had voluntarily left his employment without good cause by provoking his discharge. It was further found that the statement on his original application was a wilful misrepresentation which required the repayment of $373.-75. For the week of March 23 plaintiff was determined ineligible on the additional ground that he was not available for employment and did not establish that he had made an active and genuine search for work. On April 14 Torres was ruled ineligible for the day of April 13 on the ground of failure to report to the State Employment Service for possi-

ble job referral. Torres objected to these determinations on April 14, and a hearing was scheduled and held on May 14, at which Torres was represented by counsel. The hearing of May 14 was adjourned until June 17. In the meantime, plaintiff filed the complaint in the present case. On June 19, the Referee found that the facts were as stated by the local insurance office, and his decision to deny benefits was affirmed by the Appeal Board on July 22. Reargument on August 22 produced the same result.

Plaintiff Walter Dinger filed an original claim on March 24, 1970 stating that he had been laid off because business was very slow. His was found to be a valid original claim, and benefits were paid thereon at the rate of $60 a week. On June 23, after he had received ten benefit payments, plaintiff was interviewed as to his availability for employment. On the basis of the interview and consideration of the available appropriate jobs advertised in the newspaper, it was determined that claimant was not entitled to benefits from June 15, 1970 "until the reason for your ineligibility no longer applies." Claimant was advised that he had failed "to demonstrate an active, realistic and diligent search for work" and that his job efforts were "token in nature." The process was repeated and the non-eligibility status continued the following week. Subsequent investigation and another interview on July 14 produced the same result. In the interim, on June 30, plaintiff requested a hearing. The hearing was held on August 3. On August 7 the Referee sustained the finding of unavailability for work and that determination was affirmed by the Appeal Board on September 25.

Plaintiffs' constitutional challenge is based on the assertion that a procedure by which those who have been initially determined to be eligible for unemployment compensation benefits are deprived of such benefits pending a hearing on the correctness of this determination or a hearing on an adverse redetermination violates the Fourteenth Amendment. Plaintiff contends that the case of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), requires this conclusion. We do not agree.

The *Goldberg* case involved the same procedural issue, but it arose in the context of the public assistance programs of Aid to Families with Dependent Children and Home Relief. The distinction is vital. In its opinion, the Supreme Court repeatedly emphasized the unique situation of the welfare recipient:

" 'While post-termination review is relevant, there is one overpowering fact which controls here. By hypothesis, a welfare recipient is destitute, without funds or assets. * * * Suffice it to say that to cut off a welfare recipient in the face of * * * "brutal need" without a prior hearing of some sort is unconscionable unless overwhelming considerations justify it. * * * ' 'Against the justified desire to protect public funds must be weighed the individual's overpowering need *in this unique situation,* not to be wrongfully deprived of assistance.' " (397 U.S. at 261, 90 S.Ct. at 1016, quoting from the opinion of the three-judge court in that case, sub nom. Kelly v. Wyman, 294 F. Supp. 893, 899, 900, 901, (S.D.N.Y. 1968)) (emphasis added).

"But we agree with the District Court *that when welfare is discontinued,* only a pre-termination evidentiary hearing provides the recipient with procedural due process. * * * For qualified recipients, welfare provides the means to obtain essential food, clothing, housing and medical care. * * * Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." (397 U.S. at 264, 90 S.Ct. at 1018) (citations and footnotes omitted) (emphasis added).

The Court stated that "some governmental benefits may be administratively

terminated without affording the recipient a pre-termination evidentiary hearing." 397 U.S. at 263, 90 S.Ct. at 1018.

The concept of due process does not involve a set of fixed, unalterable principles. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the public interest that has been affected by governmental action." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). See Goldberg v. Kelly, supra, 397 U.S. at 263, 90 S.Ct. 1011, at 1018.

Under the public assistance programs of AFDC and Home Relief, need is the criterion for eligibility. This is not true of unemployment compensation. Congress specifically mandated a distinction. "Unemployment compensation is greatly preferable to relief because it is given without any means test." H.R. Rep.No. 615, 74th Cong., 1st Sess. 7 (1935). "Unemployment compensation differs from relief in that payments are made as a matter of right, not on a needs basis, but only while the worker is involuntarily unemployed." S.Rep. No. 628, 74th Cong., 1st Sess. 11 (1935). The amount of weekly benefits is based on wages previously received by the claimant, N.Y. Labor Law § 590 (McKinney 1965 and Supp.1970) and is completely unrelated to need.

The claimant denied unemployment insurance may qualify for welfare payments, if he can show the requisite need. Thus the worst possible effect of the procedure which plaintiffs attack as being lacking in due process would be that for a period of a few weeks until a hearing is held a claimant who is finally determined to be eligible for payments would have to live on his accumulated savings or, if he had no savings, would have to resort to relief. If he is eventually found to be eligible he will receive retroactively all the payments to which he was entitled.

As this court said in Escalera v. New York City Housing Authority, 425 F.2d 853, 867 (2d Cir. 1970):

> "The minimum procedural requirements of due process under the Fourteenth Amendment must reflect the balance between the government's interest in efficient administration and the nature of the individual's interest being affected by governmental action."

In the absence of the "brutal need" on which the court rested its decision in *Goldberg,* the governmental interests to which the Court referred must be held to outweigh plaintiffs' claim. These government interests include desirability of an orderly procedure for the determination that a claimant is or is not entitled to benefits under the program, without undue pressure for unnecessary speed in making that determination. They also include the loss of government funds resulting from the fact that, even accepting plaintiffs' contentions, only 50% of those amounts deemed "recoverable" are eventually recouped. (It must be emphasized again that if the ruling favors the claimant he receives retroactively the total payments to which he was entitled.)

Plaintiffs also cite Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). That case held that a state could not, by virtue of its unemployment compensation laws, abridge appellant's right to the free exercise of her religion. It has no application to the situation presented in the present case.

The case of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) is also cited and is equally inapposite.

We hold that the procedures employed by New York in the administration of unemployment compensation benefits comport with minimum standards

of due process.[1] Claimants participate in an application interview, weekly benefit rights interviews, periodic reinterviews and, as needed, claim adjustment interviews. Information which the agency has received is investigated and brought to the claimant's attention at these interviews. Finally, a full due process hearing is provided, with both administrative and judicial review, and any determination favorable to the claimant results in fully retroactive payments.

We also find plaintiffs' statutory claim to be without merit. That claim is based on one of the requirements of the Social Security Act which provides that in order to be certified by the Secretary of Labor for payment of expenses state law must include "Such methods of administration * * * as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due * * *." 42 U.S.C. § 503 (a) (1) (1964).

However

"the Secretary of Labor has concluded that a state law which provides for the determination and redetermination of rights to unemployment benefits initially at the administrative level through administrative techniques provides for a method of administration reasonably calculated to insure the full and prompt payment of benefits when due and the denial of benefits when not due as required by section 303(a) (1) [42 U.S.C. § 503(a) (1)] of the Social Security Act." (Affidavit of Paul J. Fasser, Jr., Manpower Administrator U. S. Department of Labor, Par. 4(a) (November 19, 1970)).

The Secretary also finds "that the New York Unemployment Insurance Law * * * and the practices and procedures of the New York agency thereunder * * * are in conformity with * * * the Social Security Act." Affidavit of Paul J. Fasser, Jr., supra, Par. 5. Each of the Secretary's predecessors has made the same finding, and the program has been successfully administered in this manner for over 30 years. Affidavit, supra, Par. 4(a), Par. 5. Such findings are entitled to great deference, Lewis v. Martin, 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). New York's administrative determinations are designed to "insure full payment of unemployment compensation *when due,*" 42 U.S.C. § 503(a) (1) (emphasis added). When a determination has been made that a claimant is disqualified like plaintiff Torres, or is ineligible on a week by week basis like plaintiff Dinger, it cannot be said that payments are "due."

For the foregoing reasons we deny the relief requested and dismiss the complaint.

LASKER, District Judge (concurring and dissenting).

I concur with my brothers that there is no merit to the plaintiff's statutory claim.

I dissent on the constitutional issue as to whether the Supreme Court's holding last term in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, requiring a due process hearing before the termination of welfare benefits, compels a similar proceeding before the termination of unemployment compensation. The majority holds that it does not, relying exclusively on the distinction between the need of the welfare recipient compared to that of an unemployment compensation recipient. I recognize that in *Goldberg* both the three-judge court and the Supreme Court stressed, as a key factor, the "brutal need" of the welfare recipient. I differ with my brothers in that I cannot conclude as easily as they that a benefi-

---

1. In so holding we reject the authority of Java v. California Department of Human Resources Development, 317 F.Supp. 875 (N.D.Cal.1970) since we believe that that case was incorrectly decided.

ciary of unemployment compensation whose payments are terminated does not often fall within the category of "brutal need." Indeed, such evidence as exists in the record of this case establishes that for the year 1967, 42 percent of the claimants for unemployment benefits had an annual income of less than $3,000 and 75 percent an annual income of less than $5,000.[1] Since the record also demonstrates that the average disputed compensation case takes 45 days[2] for determination, during which period no benefits are paid, it is clear that there are often cases in which, because of delay in the administrative process and personal lack of resources, those deprived of unemployment compensation are in dire straits. Indeed, as to the question of delay, the majority opinion itself points out that one of the primary advantages of a *post*-termination hearing (as presently occurs) is that it allows the government to make its determination as to whether a claimant is entitled to benefits "without undue pressure for unnecessary speed in making that determination." Nor is it an adequate answer that welfare benefits are then available. One does not automatically become entitled to welfare benefits on the termination of unemployment compensation. Indeed, the reports of the public press[3] indicate that the experience of New York City taxi drivers in the recent taxi strike was to the contrary. As strikers they were not eligible for unemployment compensation, and those without savings had no fall-back but welfare. However, arrangements to secure welfare assistance were so complicated and time-consuming that some were evicted or on the abyss of eviction from their homes before relief could be secured. Surely this is a syndrome of "brutal need."

I recognize that the unemployment compensation statute does not make need a criterion for the granting of benefits as does the welfare statute; but the "brutal need" standard referred to in *Goldberg* relates to actual financial want and not eligibility requirements. I regret that the record before us is so sparse and superficial as to the true degree of need of beneficiaries of unemployment compensation. Since my brothers find the record adequate to establish a lack of need, no purpose would be served in the present case by calling for the presentation of further data. However, since the issue is so crucial to the determination of the matter before us, I would be deeply concerned as to this deficiency were it not for the knowledge that the Supreme Court of the United States has noted probable jurisdiction of Java v. California Department of Human Resources Development, 317 F.Supp. 875 (N.D.Cal.1970), in which a three-judge court in California determined that *Goldberg* was controlling as to the termination of unemployment compensation benefits. Whether that decision is correct or not, the matter will presumably be definitively determined by the Supreme Court this term.

Under these circumstances and without the submission of further evidence on this issue, I cannot state with any degree of certainty that an individual cut off without prior hearing from the benefits of unemployment insurance will not be "condemned to suffer grievous loss,"

---

1. Testimony of James O'Brien, Assistant Director AFL–CIO, Department of Social Security, Washington, D. C.

2. The testimony (of James O'Brien, supra) describing a 45-day period of delay does not appear to distinguish between (1) disputes as to whether a claimant who has not yet received benefits is entitled to receive them, and (2) disputes, as

here, as to the propriety of *termination* of benefits. There is no reason to believe, however, that decisions as to the propriety of termination are rendered any more speedily than decisions in cases of other disputed claims.

3. The New York Times, December 17, 1970, p. 57.

**440**

Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (cited with approval in Goldberg v. Kelly, supra, 397 U.S. at 263, 90 S.Ct. 1011), or, indeed, will not be deprived "of the very means by which to live while he waits." Goldberg v. Kelly, supra, 397 U.S. at 264, 90 S.Ct. at 1018.

Finally, it is to be observed that in *Goldberg* the Supreme Court stated (at 262, 90 S.Ct. at 1017, footnote 8):

> "It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.' Much of the existing wealth in this country takes the form of rights which do not fall within traditional common-law concepts of property."

The Court continued:

> "It has been aptly noted that '[s]ociety today is built around entitlement. * * * Many of the most important of these entitlements now flow from government: * * * Such sources of security, whether private or public, are no longer regarded as luxuries or gratuities; to the recipients *they are essentials,* fully deserved, and in no sense a form of charity. It is only the poor whose entitlements, although recognized by public policy, have not been effectively enforced.'" (Emphasis added.)

The flavor of this passage suggests that, although the Court was dealing with welfare benefits only, it contemplated the possibility that other forms of "entitlement" might merit the same protection as welfare benefits. If this is so, surely no entitlement is closer in nature to welfare benefits than the payment of unemployment compensation. If the *Goldberg* rationale is to be extended to any entitlement beyond welfare benefits, the natural extension would be to unemployment compensation.