Jean CHRISTIAN and Victor L. Green, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF LABOR, DIVISION OF EMPLOYMENT, et al., Defendants.**

No. 71 Civ. 5556.

United States District Court, S. D. New York.

July 24, 1972.

Bedford-Stuyvesant Community Legal Services Corp., by Ruth Balen, Bronx Legal Services Corp., New York City, by Eric Rundbaken, New York City, and Dennis R. Yeager, and E. Richard Larson, New York City, Attys. for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., by Samuel A. Hirshowitz and Brenda Soloff, Asst. Attys. Gen., for defendants New York State Dept. of Labor and Louis L. Levine.

Whitney North Seymour, Jr., U. S. Atty., for the S. D. N. Y., by Taggart T. Adams, Asst. U. S. Atty., for Federal defendants.

Before HAYS, Circuit Judge, FRANKEL and BAUMAN, District Judges.

## OPINION

BAUMAN, District Judge.

This action tests the constitutionality of the Federal statutory scheme providing unemployment compensation benefits for former Federal employees as it is applied to those who at the time of termination of their Federal employment were in a probationary status. The principal issue is whether the provisions of 5 U.S.C. § 8506[1] and the regulations promulgated thereunder, which make the findings of the former Federal employer as to the reasons for termination binding and conclusive upon the State agency in its determination of eligibility for unemployment compensation benefits, violate the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment.

This case came on before Judge Frankel for declaratory relief, injunctive relief and a writ of mandamus. As the constitutionality of a Federal statute was seriously in doubt, Judge Frankel invoked a Three-Judge Court pursuant to 28 U.S.C. § 2282.

### I.

Plaintiff Jean Christian is a resident of Brooklyn, New York and a former

---

[1]. 80 Stat. 589, 5 U.S.C. § 8506 provides in pertinent part:

"(a) Each agency of the United States and each wholly or partially owned instrumentality of the United States shall make available to State agencies which have agreements under this subchapter, or to the Secretary of Labor, as the case may be, such information concerning the Federal service and Federal wages of a Federal employee as the Secretary considers practicable and necessary for the determination of the entitlement of the Federal employee to compensation under this subchapter. The information shall include the findings of the employing agency concerning—

(1) whether or not the Federal employee has performed Federal service;
(2) the periods of Federal service;
(3) the amount of Federal wages; and
(4) the reasons for termination of Federal service.

The employing agency shall make the findings in the form and manner prescribed by regulations of the Secretary. The regulations shall include provision for correction by the employing agency of errors and omissions. Findings made in accordance with the regulations are final and conclusive for the purpose of sections 8502(d) and 8503(c) of this title."

employee of the United States Post Office[2] in Brooklyn. Plaintiff Victor L. Green is a resident of the Bronx, New York and a former employee of the United States Department of The Treasury, Bureau of Customs, based in New York. Both plaintiffs were probationary employees when their employment was terminated. Plaintiff Christian was employed by the Post Office Department from April 4, 1970 to October 2, 1970 and was discharged because of an unsatisfactory attendance record. Plaintiff Green was a sky marshal for the Bureau of Customs from December 24, 1970 to December 18, 1971, when he was discharged for drinking an alcoholic beverage within twenty-four hours of flying. Neither plaintiff was given a prior hearing nor was one required.

Title 5 U.S.C. § 8501 et seq.[3] authorizes the United States Department of Labor to enter into agreements with State agencies to provide unemployment compensation for former Federal employees under the Unemployment Compensation for Federal Employees (UCFE) Program. The statutory scheme includes a provision that the written statement of the former Federal employer as to the reasons for termination of an employee are binding and conclusive on the State agency which administers the UCFE program. 5 U.S.C. § 8506. Such an agreement was entered into by the Secretary of Labor and the State of New York. Both plaintiffs filed claims for unemployment compensation with the New York State Department of Labor which is the administering agency. After proceeding through the appropriate State procedures each plaintiff received a final determination denying him benefits based on the written, conclusive statements of his former Federal employer.

As probationary employees, neither plaintiff was entitled to a hearing before his Federal agency employer prior to termination of employment.[4] Therefore, neither had an opportunity to contest, avoid or rebut the written reasons for his dismissal. Because the Federal findings were binding on the State agency, plaintiffs claim that they have been denied unemployment compensation benefits without due process of law and in violation of their rights to equal protection of the laws.

## II.

Prior to addressing the constitutional questions, this Court must face the claim[5] that the interpretation of 5

---

2. Defendant United States Postal Corporation assumed all the liabilities of the United States Post Office Department pursuant to 84 Stat. 738, 39 U.S.C. § 2002.

3. 80 Stat. 586, amended 81 Stat. 218, 5 U.S.C. § 8502 provides in pertinent part:

"(a) The Secretary of Labor, on behalf of the United States, may enter into an agreement with a State, or with an agency administering the unemployment comepnsation law of a State, under which the State agency shall—

(1) pay, as agent of the United States, compensation under this subchapter to Federal employees; and

(2) otherwise cooperate with the Secretary and with other State agencies in paying compensation under this subchapter.

(b) The agreement shall provide that compensation will be paid by the State to a Federal employee in the same amount, on the same terms, and subject to the same conditions as the compensation which would be payable to him under the unemployment compensation law of the State if his Federal service and Federal wages assigned under section 8504 of this title to the State had been included as employment and wages under that State law.

(d) A determination by a State agency with respect to entitlement to compensation under an agreement is subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in that manner and to that extent."

4. Compare 5 U.S.C. § 7532(c) with 5 C.F.R. §§ 315.804, 315.805, 315.806.

5. The Supreme Court in Rosado v. Wyman, 397 U.S. 397, 402, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) stated that a three judge court should consider any statutory claim prior to considering the constitu-

U.S.C. § 8506 set forth in Smith v. District Unemployment Compensation Board, 140 U.S.App.D.C. 361, 435 F.2d 433 (1970) is the correct one. If it is, mandamus will lie against the Federal officials directing them to provide hearings, upon request, to probationary employees who contest the reasons given for their termination.

We refuse to follow the construction of 5 U.S.C. § 8506 set forth in *Smith,* supra. That Court found—

> "There is no reasonable basis for supposing that whereas Congress deliberately insisted on opportunity of hearing for employees generally, it deliberately established a no-hearing enclave for a relatively small group of Federal employees . . . ." *Supra* 435 F.2d at 438.

■ In reaching that conclusion, we think that the Court ignored the structure of the Federal Civil Service Laws. Since the original Civil Service Act of 1883, Congress has made a distinction between probationary and permanent Government employees.[6] Probationary employees are not entitled to the full range of hearing rights to which permanent employees are entitled upon dismissal.[7] This distinction between probationary and permanent Government employees has been recognized by the Courts on many occasions[8] and Congress surely was aware of it in 1954 when it passed the legislation creating the UCFE Program.

■ Certainly Congress intended that Federal employers should have an unfettered right to terminate probationary employees. No termination hearing is prescribed or required nor should it be. What *Smith,* supra, attempts is to legislate judicially a hearing not now required by statute which would mandate precisely the type of hearing not now required for discharge. Such a hearing, as a practical matter, would limit the Government in the discharge of probationary employees to an extent never previously contemplated by the Congress.

■ Additionally, the idea that the use of the word "findings" in 5 U.S.C. § 8506 means "findings after a hearing" is a tortured, strained and unnecessary interpretation. We hold that the word "findings" in 5 U.S.C. § 8506 means only the written statement of reasons for termination sent by the Federal employer to the State agency administering the UCFE program. Had the Congress meant otherwise it would have said so.

### III.

Having disposed of the statutory claim, we now proceed to the constitutional claims. In this connection, defendants have interposed the threshold defense of lack of subject matter jurisdiction. In the case of the Federal defendants this defense must be sustained.

■ Plaintiffs have not met the jurisdictional requirements under 28 U.S.C. §§ 1331, 1337 or 1346, the so-called "federal question" jurisdiction sections. As neither the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, nor the provisions for invoking a Three-Judge Court, 28 U.S.C. § 2282, provide subject matter jurisdiction in and of themselves, an additional statutory basis must be alleged. There are no such allegations. The so-called "civil rights" statute, 42 U.S.C. § 1983 applies to State, not Federal officials.

The only statutory basis for jurisdiction over the dispute between the plaintiffs and the Federal defendants alleged in the complaint is 28 U.S.C. § 1361, the mandamus remedy, which has been found lacking in merit, supra.

■ However, the situation is different as to the State defendants. Plaintiffs have properly based their claim on 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

---

tional claim. See also King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed. 2d 1118 (1968).

6. 5 U.S.C. § 3321.

7. See footnote 4, supra.

8. See, e. g., Jaeger v. Freeman, 410 F.2d 528 (5th Cir. 1969), Medoff v. Freeman, 362 F.2d 472 (1st Cir. 1966).

The gist of the complaint against the State defendants is that their application of the Federal law in administering the UCFE program has denied the plaintiffs of unemployment compensation benefits without due process of law and in violation of their right to equal protection of the laws.

Ayala v. District 60 School Board, 327 F.Supp. 980 (D.Colo.1971) illuminates the issue. As the Court there said (at p. 981):

"Since plaintiffs in this action claim that their right to equal protection of the laws has been denied by Colorado officials, acting in their capacities as officials, this court clearly has jurisdiction to hear the constitutional claim and, should plaintiffs be successful, to grant the relief sought. It makes no difference that plaintiffs have not cited a state or local law upon which the defendants' conduct may be based. It is settled that the phrase 'under color of' comprehends all official behavior, even that which is patently unlawful under state, as well as federal, law."

### IV.

The State defendants assert that the alleged constitutional violations claimed by plaintiffs do not state a claim upon which relief can be granted. We agree.

Plaintiffs urge that the State defendants, in applying 5 U.S.C. § 8506 to deny them unemployment compensation benefits without a hearing, have violated the equal protection clause of the Fourteenth Amendment. That violation allegedly results from treating former probationary employees in a manner different from all other applicants for unemployment compensation.

■ To reiterate what we have previously stated, Congress had good reason to differentiate between probationary

and permanent employees in trying to promote the efficient disposition of Federal business. As the purpose of such classification is legitimate and the means adopted by Congress rational, there is no denial of equal protection. Cf. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The other constitutional issue is whether a denial of unemployment compensation benefits without a hearing violates the due process clause of the Fourteenth Amendment. This is resolved by striking a balance between the loss to the claimant resulting from a denial of such a hearing and the Government's interest in summary adjudication of claims. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg*, supra, the Supreme Court held that an evidentiary hearing was required before welfare payments could be terminated, but the factual distinctions between *Goldberg* and the case at bar compel the conclusion that the Government's interest in summary adjudication outweighs plaintiffs' need for a hearing here.

■ Welfare programs, such as aid to families with dependent children,[9] are designed to meet a different need than unemployment compensation. Such payments are designed to provide the recipient with essential food, clothing and shelter. *Goldberg*, supra, at 264, 90 S.Ct. 1011. Need is *not* the criterion for eligibility under the unemployment compensation programs.[10] Compensation is available as a matter of right to involuntarily unemployed workers and benefits are based on wages previously received by the claimant without relation to need. In fact, if an unemployed person is declared ineligible for unemployment compensation benefits he may nonetheless qualify for welfare payments on the basis of his need. The plain fact is that unemployment compensation benefits are

---

9. 49 Stat. 627, as amended, 42 U.S.C. §§ 601–610.

10. See N.Y. Labor Law §§ 590, 591 (McKinney's Consol.Laws, c. 31, 1972 Supp.)

which sets forth the rights and eligibility requirements for unemployment compensation in New York.

not as crucial to the survival of the claimant as are welfare benefits.

■ *Goldberg,* supra, also holds that recipients *already receiving* benefits are entitled to a hearing before termination of those benefits. In the case at bar plaintiffs have not received benefits but have only applied for them. In fact, a three-Judge panel of this Court· has held that the suspension or termination without a prior hearing of *unemployment compensation benefits* already being paid *without a prior hearing* is not violative of the Fourteenth Amendment. Torres v. New York State Department of Labor, 321 F.Supp. 432 (S.D.N.Y. 1971), vacated and remanded, 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), *previous decision adhered to,* 333 F.Supp. 341 (S.D.N.Y.1971). That Court pointed out that the "brutal need" of the welfare recipients in *Goldberg* was not present in circumstances involving recipients of unemployment compensation. The same Government interest in the efficient operation of the unemployment compensation program which was present in *Torres,* is present here. On balance, the interests of the Government outweigh plaintiffs' need for a hearing and so the due process claim cannot be sustained.

Given the above disposition of the case it is not necessary to reach a decision as to whether plaintiffs' suit is properly brought as a class action. The action is dismissed.

FRANKEL, District Judge (dissenting):

My difference with the majority is not on the questions of constitutional law, which I would not reach. Instead, on grounds like those set out in Smith v. District Unemployment Compensation Board, 140 U.S.App.D.C. 361, 435 F.2d 433 (1970), I would hold as a matter of statutory construction that the plaintiffs and other federal probationary employees like them are entitled to at least a rudimentary hearing somewhere on "findings" asserted to bar their claims for unemployment compensation.

Dealing as we do here with related statutes enacted at widely separate times, our problem is one on which differences respecting general principles of interpretation may be decisive. Such statutes, though intended to be interconnected, often fail to mesh with automatic precision. The same words or phrases may take varied colors from their varying contexts. Words defining classes of people or things may later need expansive readings to avoid omissions that must fairly be deemed inadvertent, cf. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), or constricted interpretations to avoid a literally required inclusion offensive to informed reason and good sense, cf. Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). The administration of such measures for the faithful implementation of legislative purposes is among the more challenging and creative of the tasks entrusted to judges. There is no formula that tells how much of literalism and how much of other things may be required for the particular case. The work calls truly for judgment in a field that has fairly been described as being "not a science but an art." [1]

In the instant case, though most respectfully, I think the majority has followed literal meaning and syntax to the point of mistakenly sacrificing goals dominant in the statutory scheme. Specifically, today's decision excludes a small group of federal employees from the basic right to be heard when (1) Congress evidenced its express purpose to make that right available to all employees, private or public, (2) Congress likewise evinced the aim of avoiding second-class citizenship for federal employees with respect to the elemental need for a dignified form of wage substitute in times of unemployment, (3)

---

1. Frank, Words and Music: Some Remarks on Statutory Interpretation, 47 Colum.L.Rev. 1259 (1947).

the great bulk of federal employees are in fact upon a substantial par with private workers in having an opportunity to contest factual determinations which, if adverse, may preclude unemployment compensation, (4) the deprived group, probationary employees, appears not to have been specially noticed during the legislative process, and certainly not to have been singled out for the special deprivation to which it is today held subject, and (5) the opposite result from the majority's, more consonant with the deep commitment of our jurisprudence to fair hearings as prerequisites to adverse determinations, is readily reconcilable with the text and essential objects of the pertinent statutory provisions. These thoughts are elaborated in what follows.

(1) From the inception of the federal legislation for federal funding, and limited federal supervision, of state unemployment compensation programs, one of the few requirements binding the States was that their laws include provision for

"[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied * * *." Social Security Act of 1935, § 303(a) (3), 49 Stat. 626, 42 U.S.C. § 503(a) (3).

At the time of that enactment, almost 40 years ago, our notions of fair procedure embraced a far less sweeping insistence upon the right to be heard than is prevalent today. The emphasis in the statute, moreover, was on broad latitude for state legislative preferences in "all matters in which uniformity is not absolutely essential."[2] Even in those circumstances, the right of a "fair hearing" was enshrined as a requisite of suitably "high administrative standards"[3] for the envisioned state unemployment compensation programs.

(2) Almost 20 years after providing for workers in private industry, the Congress created the program of unemployment compensation for federal employees, out of which the present case arises. An obvious and explicit impulse, if somewhat belatedly followed, was the concern for elementary fairness. "[T]he Federal Government should not be in the position of providing less favorable conditions of employment than are required of private employers."[4] For federal as well as private employees, under either of the alternative plans Congress provided, an employee denied compensation was (and is) to be given a "fair hearing." 5 U.S.C. §§ 8502(b), 8503(c).

We come, however, to 5 U.S.C. § 8506(a), upon which the present controversy centers. As set out in Judge Bauman's opinion for the court, the "findings" there designated, including those concerning "the reasons for termination of Federal service," are declared to be "final and conclusive for the purpose of sections 8502(d) and 8503(c) * * *." The question before us is whether adverse "findings" which may operate to bar unemployment compensation are thus foreclosed from inquiry anywhere for the narrow group of employees who have never had any opportunity to contest them.[5]

(3) When Congress wrote the provisions before us for "federal employees," it drew no distinction between permanent and probationary workers. Neither the statute nor its history suggests that

---

2. Message of the President, Jan. 17, 1935, H.Doc.No.81, 74th Cong., 1st Sess., p. 16.

3. *Id.* at 4.

4. S.Rep.No.1794, 83d Cong., 2d Sess., in 3 U.S.Code, Cong. & Ad.News, pp. 3891, 3894 (1954).

5. More precisely, plaintiff Jean Christian did have a hearing before a state hearing officer, and she prevailed—i. e., the reason asserted for her dismissal (and denial of unemployment compensation) was determined upon airing to be unfounded. In the view now sustained by a majority of this court, however, the hearing officer was held on an administrative review to have erred in hearing Miss Christian at all, and the denial of compensation payments was held to follow from the untested "finding" of the federal employer.

anyone had such a distinction, or its possible consequences, in mind.[6] The great majority of federal employees are, of course, those in the permanent category. The prototypical civil servant, the one we are likely to envision when thinking in the global concepts of legislators, is in this group. Given that reality, and given the familiar procedures governing the separation of permanent civil servants, it is reasonable to infer that the "findings" declared "final and conclusive" were conceived as those affecting, and resulting from procedures affecting, permanent civil servants.

The very word "findings" buttresses this inference. If it is not inescapably true, the word commonly refers to resolutions or determinations following deliberations upon evidence in a manner of which the judicial process is the ideal case. See Black's Law Dictionary 758 (4th ed. 1957), citing cases. If the probable image is not always of a full-scale trial "hearing," it is certainly not of the simple assertion of a "fact" or merely "the conclusory statement of a result" where there has been no opportunity for countervailing presentations and no pretense of considering two sides. Coleman v. Brucker, 103 U.S. App.D.C. 283, 257 F.2d 661, 662–663 (1958); Sims v. Greene, 161 F.2d 87, 89 (3d Cir. 1947). And if the word "findings" means anything more than such untested declarations, it was an apt term for permanent civil servants, but not apt at all for probationary people.

For decades before the enactment of UCFE in 1954, permanent civil servants had a right to contest, and to make presentations opposing, grounds asserted for their dismissal. While the Lloyd-LaFollette Act, August 24, 1912, § 6, 37 Stat. 555, as amended, 5 U.S.C. §

7501(b), gave (and gives) no full-scale trial hearing, it required notice and charges in writing, a reasonable time to answer in writing, opportunity to file affidavits and at least an opportunity to seek discretionary grant of a hearing. Executive regulations implementing these rights have continued to expand them. Without tracking every detail, there was a right in 1954 (when the UCFE was enacted) to a written decision stating "the reasons for the action taken and its effective date." 5 C.F.R. § 9.102(a) (1) (1949). Beginning in 1962, with Executive Order No. 10987, 27 F.R. 550 (Jan. 18, 1962), permanent employees have had a right to a full "hearing" to contest dismissals, either at the agency stage or on appeal. See 5 C. F.R. § 771.101 *et seq.* (1972).

(4) Thus, for the overwhelming majority of federal employees, those in the permanent service, the findings declared "final and conclusive" under § 8506(a) have at all times been reached after at least some opportunity for contest. No such opportunity has existed at any time for the probationary employee. Our question is whether plain language or anything else compels the harsh result of denying such an employee unemployment compensation (no question is raised as to the finality of his federal termination) on grounds he has never had a chance to refute.

It is not possible to say with assurance that the "plain language" of § 8506(a) requires a decision against the plaintiffs. The term "findings" fits at best crudely the ex parte declarations upon which plaintiffs were dismissed. But, neatly or not, the word does fit. If textual analysis were the whole of our responsibility, plaintiffs would probably deserve to lose. However, almost every-

---

6. I am a long way from sharing the confidence of the majority that Congress "surely was aware" of this distinction at the time of the passage of the UCFE. It is always a risky business to detect sure awareness in a busy Congress where the subject appears never to have been mentioned. The assumption would

be arguable if the UCFE legislation had been under the charge of the committee in either house concerned with civil service affairs. That was not the case, however; the responsible committees handling UCFE were House Ways and Means and Senate Finance.

thing else germane to our problem points the other way.

(5) The strikingly inferior position to which plaintiffs have thus far been relegated for unemployment compensation purposes was never decreed—and seems never to have been considered as a prospect—by the Congress. The explicit purpose of putting public and private employees on a par applies at least as much to probationary workers (whose employment is more precarious) as to permanent workers for purposes of insurance against unemployment. The powerful impetus in our law favoring the right to be heard weighs against the denial of such a right said to be required by a semantic analysis so rickety as that erected upon the word "findings" in the present context. The concern for "uniformity" of federal "findings," which appears to have prompted the finality provision, is scarcely grazed by allowing a state hearing officer to find out with some decent measure of reliability whether (solely for unemployment compensation purposes) the federal probationary employee in fact drank when he should not have or was improperly absent without reporting.[7]

The arguments against the majority's conclusion acquire at least some modest support from the constitutional arguments that gave birth to this three-judge court. Though the arguments are today rejected, neither of my distinguished brethren suggests that the issues thus decided lack substance. Thus, the construction I would adopt has the merit of avoiding constitutional doubt. United States v. Thirty Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1970); Schneider v. Rusk, 390 U.S. 17, 27, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968); United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953). More specifically, it is pertinent to recall analogous areas where the Supreme Court has avoided constitutional doubt by discovering upon analysis that the word "final" in a statute should not always be construed to foreclose further review of a disputed question. Estep v. United States, 327 U.S. 114, 122, 127–128, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369 (1908) (Holmes, J.)

Finally, it is worth stressing that we deal with a class of necessitous people claiming the benefits of broadly remedial legislation. If there is doubt about the statutory meaning—and I urge at least that, recalling, *inter alia,* a unanimous D.C. Circuit ruling in conflict with the present majority—it ought to be resolved with liberality toward those for whom the benefit was created. Cf. Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5 (1953); Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366 (1932); Wheatley v. Adler, 132 U. S.App.D.C. 177, 407 F.2d 307 (1968); United States v. Udy, 381 F.2d 455, 456 (10th Cir. 1967); Phoenix Assurance Co. of N.Y. v. Britton, 110 U.S.App.D.C. 118, 289 F.2d 784, 786 (1961). See also

---

7. The majority says a hearing solely for unemployment compensation purposes "as a practical matter, would limit the Government in the discharge of probationary employees to an extent never previously contemplated by Congress." It should be stressed, therefore, that nobody claims a right of the probationary employee to test his *discharge* in a hearing. The only question is as to the availability of a hearing (given to everyone else, public or private) on eligibility for unemployment compensation. When the majority speaks of what is foreseen "as a practical matter," it evidently reflects the concern, exhibited in arguments to us for defendants, that the prospect of a hearing—even though not testing the discharge or capable of doing so—would make supervisors in the employing agencies timorous about discharging probationary people. This is a regrettable position. Insofar as it is accurate, it portrays a regrettable situation. We ought not to be so "practical" that we fashion legal judgments upon the premise that federal officials commonly fire people upon grounds so tenuous that they would not dare order the firings if they thought someone, somewhere else, without authority to reverse the firings, might so much as air the asserted grounds.

Pillsbury v. United Engineering Co., 342 U.S. 197, 200, 72 S.Ct. 223, 96 L.Ed. 225 (1952).

I would grant judgment for the plaintiffs sustaining their right to a "fair hearing," like the right of private compensation claimants, unless they are offered a prompt hearing, only for purposes of compensation, by the federal agencies in which they were formerly employed. Cf. Smith v. District Unemployment Compensation Board, supra, 435 F.2d at 438–439.

