In the Matter of the Claim of JACK FERMAGLICH, Appellant. Louis L. LEVINE, as Industrial Commissioner, Respondent.

Third Department, March 8, 1973.

*John J. Broderick* for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Frederick M. Paola, Samuel A. Hirshowitz* and *Murray Sylvester* of counsel), for respondent.

HERLIHY, P. J. This is an appeal by the claimant, *pro sé*, from a decision of the Unemployment Insurance Appeal Board, filed July 28, 1972, which reversed a Referee's decision in favor of claimant and sustained the respondent's initial determination disqualifying the claimant from receiving benefits because he lost his employment through misconduct (Labor Law, § 593, subd. 3).

Claimant, a postal clerk, was employed by the United States Post Office as a probationary employee for a period of slightly less than six months until May 19, 1971 when his employment was terminated. Shortly thereafter claimant pursuant to chapter 85 of title 5 of the United States Code — Unemployment Compensation for Former Federal Employees (UCFE) — filed a claim for unemployment insurance benefits effective May 31, 1971 with the New York State Department of Labor.

Subsequent to the filing of claimant's claim for unemployment insurance benefits, the Postal Data Center, the Federal agency where claimant had been employed, in response to a request for wage and separation information form, reported that claimant's employment had been terminated '' for being apprehended by a postal inspector for theft of mail on 5/03/71 ''. Thereafter, the Postal Data Center, in response to a request for information or reconsideration of Federal findings, which request was prompted by claimant's denial that he was guilty of stealing from the mails, reported that claimant's employment ended because: '' Termination during probation 5/19/71 for being apprehended by the postal inspection service for theft of mail on 5/3/ 71.'' Furthermore, it reported that claimant had no appeal rights to the United States Civil Service Commission since he was in a probationary status with less than six months of service on the date of his termination. As a result of this information, claimant, by initial determination dated June 14, 1971, was found to be disqualified from receiving unemployment insurance benefits since he had been discharged for misconduct in connection with his employment.

Upon being advised of the initial determination, claimant requested a hearing contending that '' [t]he charges held against him by the Post Office are not true ''.

Although the claimant had been indicted by a Federal Grand Jury for mail theft, prior to the time of the hearing before the Referee on the initial determination, the United States District Court for the Eastern District of New York, on October 20, 1971

and on the motion of the United States Attorney, dismissed the indictment.

By decision filed January 12, 1972 the Referee overruled the initial determination finding: "[s]ince claimant was not granted a fair hearing by the Federal authorities, the referee is not bound by the findings of claimant's Federal employer. Claimant testified that he did not steal mail. No substantial evidence was submitted to show that claimant did steal mail. Under the circumstances, I find that claimant did not lose his employment because of misconduct in connection with his employment."

On appeal, however, the Unemployment Insurance Appeal Board reversed the Referee's decision and sustained the initial determination finding: "[b]y virtue of the rules and regulations of the Federal employer, we are bound by the Federal agency's findings concerning the cause of the termination of claimant's employment. * * * Thus, despite the fact that the U. S. Attorney saw fit, on his own motion, to quash the indictment, we are bound by the Federal agency's findings that claimant was 'apprehended stealing U. S. mail.' Since the theft of mail is not only criminal but is also conduct detrimental to the employer, we must rule that claimant's employment terminated because of misconduct in connection with his employment."

Section 8502 of title 5 of the United States Code authorizes the United States Department of Labor to enter into agreements with State agencies to provide unemployment compensation for former Federal employees under the Unemployment Compensation for Federal Employees (UCFE) Program. Pursuant to this authorization as well as the authorization conferred on the Industrial Commissioner of the State of New York by section 536 of the Labor Law, such an agreement has been entered into by the Secretary of Labor and the State of New York.

The statutory scheme of chapter 85 of title 5 of the United States Code includes a provision that the written statement of the former Federal employer as to the reasons for the termination of the employment of the employee is binding and conclusive on the State agency administering the UCFE program (*Matter of Hiken* [*Levine*], 40 A D 2d 926; cf. *Matter of Forte* [*Lubin*], 2 A D 2d 903, 904). Specifically, subdivision (a) of section 8506 provides: "the employing agency shall make the findings in the form and manner prescribed by regulations of the Secretary. The regulations shall include provision for correction by the employing agency of errors and omissions. Findings made in accordance with the regulations are final and conclusive

for the purpose  \*  \*  \*  [of the State agency's determination with respect to entitlement to compensation]."

The Secretary of Labor has provided such regulations at part 609 of title 20 of the Code of Federal Regulations. Section 609.18 (subd. [a]) of these regulations provides in pertinent part: "Federal findings  \*  \*  \*  shall be final and conclusive except that Federal findings which contradict the reasons given by a Federal civilian employee for his resignation or which relate to the validity of such reasons shall not be final and conclusive unless such employee has been afforded an opportunity for a fair hearing on any issue involved in the alleged reasons for resignation."[1]

The issues upon this appeal are whether the claimant must be granted a hearing and opportunity to rebut the report of his former employer as relating to the reasons for the termination of employment before such report becomes final and conclusive as to the reasons for the termination of the employment; and whether the report submitted by the former employer accepted as binding and conclusive as to the reasons for the termination constitutes substanial evidence that the claimant provoked his discharge by his misconduct.

In New York State the Federal findings as to the reasons for termination of employment have been treated as conclusive and binding to the extent that such reasons are contained in the report of the Federal employer. Beyond the acceptance of the employer's reasons for the termination of the employment, the New York State unemployment insurance proceedings determine whether, based upon the reasons for the termination of the employment, a claimant is to be disqualified or qualified for benefits. In general, as to Federal employees, the Federal statute and regulations have been treated as requiring a two-step process in New York, the first being absolute acceptance of the reasons given by the Federal agency for the termination of its employment, and the second step being the conclusions of fact and/or law in the New York State administrative process of whether or not such reasons constitute an involuntary loss of employment without disqualifying fault on the part of the claimant.

---

1. Section 609.23 provides the procedure for correcting Federal findings either by the Federal civilian employee or the State agency and section 609.25 provides that, except for Federal findings which are final and conclusive under section 609.18, a State agency's determination as to a Federal civilian employee's entitlement to unemployment compensation is subject to review in the same manner and to the same extent as other determinations of entitlement under the State unemployment compensation law.

In this particular case the report by the Federal agency conclusively establishes that the claimant involuntarily lost his employment. Ordinarily, an employee who has involuntarily lost his employment and otherwise meets the past work requirements will receive unemployment insurance benefits upon his application therefor. However, the rule in New York is that where the involuntary loss of employment (i.e., fired) results from misconduct on the part of the employee, the employee is disqualified from benefits. There is no dispute but that theft by an employee from his employer constitutes misconduct and would disqualify the claimant herein from benefits.

It thus becomes certain that the board having adopted the legal proposition that the claimant was not entitled to contest the report of the Federal agency in the New York proceeding necessarily had to determine whether the report by the Federal agency established misconduct — theft. As noted in the quotation hereinabove, the board stated in its decision that the Federal agency had found that the claimant was " apprehended stealing U. S. mail." However, as will be observed from the Federal findings as quoted verbatim hereinabove, the agency never reported that the claimant was apprehended while stealing anything.

The question thus becomes whether the board was entitled to draw the factual conclusion from the literal language of the report by the Federal agency that the claimant had been actually found stealing, or that there had been any agency determination that the claimant had stolen mail. In this regard, it must be noted that as a general proposition all claimants in New York State are entitled to a hearing upon the question of any asserted disqualification from benefits. The exception mandated in regard to the handling of Federal claimants is limited by the appropriate statute and regulations quoted hereinabove solely to the facts represented as found by the Federal agency. It seems fundamental that everyone who is otherwise eligible to receive a benefit should be entitled to invoke the requirements of due process and a hearing in regard to any alleged disqualification. The binding effect of the report by the Federal agency should be literally and strictly construed in regard to establishing misconduct or other disqualifying factors where the same report establishes that otherwise the claimant would be entitled to receive unemployment insurance benefits.

In this particular case the Federal agency report at most states that the claimant was apprehended or otherwise charged with a mail theft and it does not by implication or otherwise constitute substantial evidence to infer that the claimant had

been found by the agency or his superiors to have actually stolen mail. Furthermore, the second report of the Federal agency points out that the claimant was a probationary employee and it is common knowledge that such employees may be fired without any particular reason by the governmental employer. *At most, the reports from the Federal agency would establish that the claimant was charged with a theft of mail and that for that reason, without coming to any conclusions as to guilt or innocence, the agency exercised its prerogative as to a probationary employee and simply terminated the employment.* Being charged with an act which would constitute misconduct would not support a disqualification from benefits in New York State without a finding that the employee was guilty of misconduct, and upon the present record there is no evidence which would support a finding that he was guilty of the theft of mail or misconduct.

For the foregoing reasons the decision of the board must be reversed because the finding of misconduct is not supported by substantial evidence and the Federal agency did not report that it found the claimant guilty of mail theft.

In this particular case a 1970 decision of the District of Columbia Circuit Court of Appeals, *Smith* v. *District Unemployment Compensation Bd.* (435 F. 2d 433) was brought to the attention of the Unemployment Insurance Appeal Board and has been considered upon the appeal to this court.

Apparently the exception that exists in section 609.18 (subd. [a]) of the regulations of the Secretary of Labor as to the finality of Federal findings in resignation cases where the former Federal employee has not had an opportunity for a hearing on these findings before an impartial tribunal was prompted by the decision in *Smith* v. *District Unemployment Compensation Bd.* (*supra*). But, despite the Attorney-General's protestations to the contrary, this decision does not appear to be limited to resignation cases.

In the *Smith* case (*supra*), the court, in interpreting section 8506 of title 5 of the United States Code, concluded that where a person seeking unemployment compensation payable under State law has left Federal government employment, and the Federal employing agency has made findings as to the reasons for the termination of service, those findings are not conclusive unless the employee has had a hearing before an impartial tribunal (cf. *California Human Resources Dept.* v. *Java*, 402 U. S. 121 [holding that unemployment compensation benefits may not be suspended automatically upon an employer's appeal after an initial determination of eligibility]; *Samples* v. *Levine* [N. D.

N. Y., June 23, 1972] [holding that the provisions of section 598 of the Labor Law authorizing the State to withhold payment of unemployment insurance benefits during the prosecution of an appeal from a Referee's determination were unconstitutional]; but cf. *Torres v. New York State Department of Labor,* 321 F. Supp. 432 [S. D. N. Y. 1971] vacated and remanded 402 U. S. 968, previous decision adhered to, 333 F. Supp. 341 [S. D. N. Y.], affd. 405 U. S. 949 [holding that the suspension or termination without a prior hearing of unemployment compensation benefits already being paid is not violative of the Fourteenth Amendment]).[2]   In arriving at this conclusion the court reasoned that, since Congress had expressly provided that grants by the United States to States for the administration and payment of unemployment compensation should not be made unless the Secretary of Labor finds that State law includes a provision for an opportunity for a hearing, before an imparital tribunal for all individuals whose claims for unemployment compensation are denied (U. S. Code, tit. 42, § 503, subd. [a]); "there is no reasonable basis for supposing that whereas Congress deliberately insisted on opportunity of hearing for employees generally, it deliberately established a no-hearing enclave for a relatively small group of Federal employees, and permitted them to be conclusively bound by a Federal finding made in the absence of a hearing." (*Smith v. District Unemployment Compensation Bd., supra,* p. 438).

In *Christian v. New York State Dept. of Labor, Division of Employment* (347 F. Supp. 1158 [S. D. N. Y., 1972]), the court rejected the interpretation of section 8506 of title 5 of the United States Code set forth in the *Smith* case.

With certain possible exceptions the rule in New York State is that our courts will give effect to the interpretations of a Federal statute by a Federal court.   (See, e.g., McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 261.)   If it were necessary to reach the issue of whether a Federal claimant may be denied benefits by giving conclusive and binding effect to the findings of the Federal agency where a claimant has had no hearing and no opportunity for a hearing, the case of *Smith v. District Unemployment Compensation Bd. (supra)* would be considered con-

---

2. The distinction between the *Java* and *Samples* cases and the *Torres* case seems to be that in *Torres* the benefits which the claimant was receiving were not automatically terminated, but rather were only terminated by the local unemployment insurance office which had initially determined that claimant was eligible for such benefits following an interview with the claimant which was prompted by a letter from his employer indicating that claimant had been discharged because of repeated lateness for work. (See Labor Law, § 597.)

trolling, the attempted rejection of the same by the District Court notwithstanding.

The decision should be reversed, with costs, and the matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith.

STALEY, JR., GREENBLOTT, SWEENEY and KANE, JJ., concur.

Decision reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith.