John R. DILLARD, etc., Plaintiff,

v.

**INDUSTRIAL COMMISSION OF VIR-
GINIA et al., Defendants.**

Civ. A. No. 537–71–R.

United States District Court,
E. D. Virginia,
Richmond Division.

July 17, 1972.

Judgment Vacated Dec. 11, 1972.
See 93 S.Ct. 566.

72

Kurt Berggren, Roanoke, Va., John M. Levy, Neighborhood Legal Aid Society, Inc., Richmond, Va., for plaintiff.

Willard I. Walker, Richmond, Va., for defendant Aetna Casualty & Surety Co.

Vann H. Lefcoe, Anthony F. Troy, Richmond, Va., for other defendants.

Before BRYAN, Circuit Judge, and KELLAM and MERHIGE, District Judges.

## OPINION

KELLAM, District Judge.

Plaintiff brings this action on behalf of himself and all other persons similarly situated, challenging the constitutionality of a Rule of the Industrial Commission of Virginia (Commission). He asserts the Commission approved a memorandum of agreement entered into between Aetna Casualty & Surety Company (Aetna), insurance carrier for Roanoke Mills, Incorporated, and himself, for the payment of a weekly sum beginning March 23, 1971, and to continue during his incapacity, with medical benefits. Thereafter, Aetna filed a petition with the Commission asserting a change of condition and ceased payment on and after the date of the filing of the petition. It subsequently resumed payment.

The limited issue before the Court is whether Rule 13 of the Rules of the Commission violates plaintiff's [and the class he purports to represent] rights to due process guaranteed by the Fourteenth Amendment to the Constitution of the United States. Plaintiff asserts that the Rule permits the termination of the payment of benefits by an employer or insurer, on the ground of a change in the condition of the employee, prior to a full hearing on the merits by the Commission.

The Virginia Workmen's Compensation Act, Title 65.1 of the Code of Virginia, 1950, as amended, Volume 9, was enacted in 1968, Chapter 660 Acts of Assembly of 1968, to take effect October 1, 1968. It was a rewrite and revision of former Title 65. The first Workmen's Compensation Act of Virginia was adopted by the Legislature in 1918, Acts of Assembly of 1918, Chapter 400, page 640. It was modeled after and followed the Act adopted by the State of Indiana.

Pursuant to the Act, compensation is paid for all workmen coming within the provisions of the Act if injured during the course of their employment. The Act provides a system where employer and employee may escape personal

injury litigation, and provides for the payment of compensation under fixed rules. It was a substitute of more certain and broader remedies for the previously existing inadequate common law rights and remedies, regardless of fault or negligence. The doctrines of contributory negligence, assumption of risk, fellow servant, and similar defenses, which frequently defeated recoveries and occupied the time of litigants and the courts, were abolished. The advantages are shared by the employer and employee. Damages resulting from an accident are treated as a part of the expense of operating the business. The Act, in effect, read into every contract of employment, within the provisions of the Act, the obligation of the employer to pay the employee for injuries. It provided an exclusive remedy in the field of industrial accidents, leaving the common law remedies to those incidents not covered by the Act.

██ A proceeding under the Act is not one for damages for a wrong done, but to obtain compensation for a loss sustained by reason of injury and disability. The employer's liability is not based upon tort, the rules of the common law for tort actions do not apply, and the rules of evidence are "so laxly" enforced that an award may be made on hearsay evidence alone if credible and not contradicted. Glassco v. Glassco, 195 Va. 239, 77 S.E.2d 843; Burlington Mills Corporation v. Hagood, 177 Va. 204, 13 S.E.2d 291; Humphries v. Boxley Brothers Co., 146 Va. 91, 135 S.E. 890.

Workmen's Compensation benefits are not mandatory for the employee. By notice he may exempt himself from the terms of the Act and retain his common law rights. No such right exists for the employer. Virginia Code 65.1–23, etc.

The Commission, operating within the general legislative framework, and having both regulatory and judicial functions, is charged with the administration of the Act. When an employee is injured, he may enter into a "Memorandum of Agreement" with his employer or the employer's insurance carrier, stipulating the right to compensation, the average weekly wages, the amount of compensation, and the period of payment. The memorandum is then submitted to the Industrial Commission for approval. This was the procedure followed in the case at bar. If an agreement is not approved, or if the parties have not been able to agree, the matter is heard and determined by the Commission. Enforcement of the award is not with the Commission, but vested in a court of record of Virginia. Virginia Code Section 65.1–100.[1]

A review of an award may be had upon motion of the Commission or of any party in interest "on the ground of a change in condition." Virginia Code Section 65.1–99. Upon such review, the Commission may increase or decrease the compensation previously awarded, but no such review "shall affect such award as regards any moneys paid." Virginia Code 65.1–99.

Prior to the enactment of Rule 13 of the Commission, there was no provision in the Act or Rules to prevent an employer or insurer from ceasing payment of benefits at any time, asserting a change in condition, and either petitioning for an amendment or correction of the award, or waiting for the employee to proceed with action.[2]

To prevent the insurer or employer from following such procedure, the Commission, utilizing the authority granted by the Act—Virginia Code Title 65.1–18

1. Section 65.1–100 provides that any interested party may file in a court of record a copy of the memorandum of agreement approved by the Commission, or its order or decision, or its award, and the court shall render judgment in accordance therewith and notify the parties. Such judgment has the same effect as any other judgment rendered in that court. Such is the way for enforcement.

2. In such event the employee could petition the Commission for an amendment of the award as provided in § 65.1–99, or proceed with enforcement of his existing award under the provisions of Virginia Code § 65.1–100.

—enacted Rule 13, recently amended, which provides:

Applications for Review on Ground of Change in Condition.—Applications for review under § 65.1–99 of the Act must be in writing and state the ground relied upon for relief. Reviews of awards on the ground of a change in condition shall be determined as of the date of the filing of the application in the offices of the Commission, except as provided in paragraphs two and three hereof.

All applications for hearing by an employer or insurer under § 65.1–99 shall show the date through which compensation benefits have been paid. No application shall be considered by the Commission until all compensation under the outstanding award has been paid to the date such application is filed with the Commission. Except, that in any case in which the employee has actually returned to work or has refused employment (§ 65.1–63), medical attention (§ 65.1–88), or medical examination (§ 65.1–91), compensation may be terminated as of the date the employee returned to work or refused employment, medical attention or medical examination, or as of a date fourteen days prior to the date the application is filed, whichever is later. In such cases the application will be considered and determined as of the date of return to work, or refusal, or as of a date fourteen days prior to the date the application is filed, whichever is later. *All applications by an employer or insurer shall be under oath and shall not be deemed filed and benefits shall not be suspended until the supporting evidence which constitutes a legal basis for changing the existing award shall have been reviewed by the Commission, or such of its employees as may be designated for that purpose, and a determination made that probable cause exists to believe that a change in condition has occurred.*

All applications for hearing by an employee on the ground of further work incapacity shall be considered and determined as of the date incapacity for work actually begins, or as of a date fourteen days prior to the date the application is filed, whichever is later.

NOTE: The italicized portion represents the language of the amendment which became effective April 1, 1972.

Neither the statute, nor the Rule enacted, make any provision for the employer or insurer to cease payments. They merely provide that upon a change in condition the Commission may review any prior award and make a new award ending, diminishing or increasing the compensation previously awarded. The statute makes no grant to the Commission to stop an award previously granted prior to a review by the Commission. Rule 13, enacted by the Commission, sets forth the procedure to be followed upon the filing of a petition alleging a "change in condition." In effect, it provides the application for review (a) must be in writing, under oath, and state the grounds for relief, (b) the review will be determined as of the date of the filing of the application, (c) it must show the date through which compensation has been paid, (d) no application will be considered until compensation has been paid to the date of the filing, and (e) the application shall not be deemed filed and benefits shall not be suspended until the supporting evidence which constitutes a legal basis for changing the existing award has been reviewed by the Commission, and a determination made that probable cause exists to believe that a change in condition has occurred. An exception exists where an employee (a) has returned to work, or (b) has refused employment, medical attention or medical examination.

Nowhere in the Rule does it authorize or direct the employer or insurer to cease payments before a full hearing. It merely provides the Commission will not hear the petition of the employer or insurer asserting any change in condition if payments under the

award have not been made up to the date the application is deemed filed, with an admonition that benefits *shall not* be suspended until the supporting evidence submitted with the petition has been reviewed and it is determined probable cause exists to believe a change has occurred, and if a finding of probable cause is made, the application will then be deemed filed. Here again, it does not authorize or direct suspension of payments, but merely provides the insurer or employer may not have a hearing on an alleged change of condition unless and until the provisions of the Rule are complied with. The determination of "probable cause" is to be made from an examination of "supporting evidence which constitutes a legal basis" for changing the existing award. Nowhere does the Rule say the determination may be made without notice to the employee and a chance to be heard. The mere fact such an inference may exist—a determination without notice to the employee and an opportunity to be heard—does not render the language objectionable on its face. Lindsey v. Normet, 405 U.S. 56, 65, 92 S.Ct. 862, 31 L.Ed.2d 36. The amendment to the Rule is new and the evidence does not indicate what the Commission will require in the way of supporting evidence to constitute a legal basis for establishing probable cause to believe a change in condition has occurred. As pointed out above, any payments made prior to the filing of the petition and prior to the Commission's authorizing a change of the award are not recoverable by the employer or insurer. Virginia Code Section 65.1–99. To discourage unwarranted applications for cessation of payments or other abuses, the Act provides that if employer or insurer bring, prosecute or defend any proceeding without reasonable grounds, the Commission or court may assess them with all of the costs, including a reasonable attorney's fee for any counsel appearing for the employee. Virginia Code Section 65.1–101.

It must be kept in mind that the award is for a stipulated sum per week "during incapacity." It is not an unlimited award. When incapacity ceases, the award ceases to exist.

Plaintiff's attack upon the Rule[3] is that it authorizes the insurer or employer to cease payments without meeting the requirements of due process. He says it permits a change in the award without the holding of a full-scale hearing at which he may be permitted to present evidence and contest any contentions made by the insurer or employer. Plaintiff makes no contention that he is denied the opportunity of a full-scale hearing with the assistance of counsel, when the application for a review is heard by the Commission.

The average time between the filing of an application for a review of the award on an alleged change in condition and the full-scale hearing by the Commission is one month. But even assuming that the Rule does not provide for notice and a hearing to the employee prior to termination of the award, and that the Rule is authority for the employer or insurer to terminate payments, under the facts and circumstances in this case the State function involved does not constitute a denial of due process. A full due process hearing is provided with the right of appeal to the highest court of the State and any determination favorable to the employee results in full retroactive payments.

The very nature of due process negates any concept of inflexible procedure universally applicable to every imaginable situation. As early as Hagar v. Reclamation District No. 108, 111 U.S. 701, 707–708, 4 S.Ct. 663, 667, 28 L.Ed. 569, the Court said "that by 'due process' is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected." Numerous definitions have been given of due process varying from that set forth in Joint Anti-Fascist Refugee Committee

---

3. He makes no attack upon the language of the statute, but only the Rule enacted by the Commission.

v. McGrath, 341 U.S. 123, 162–163, 71 S. Ct. 624, 643, 95 L.Ed. 817 saying it represents "a profound attitude of fairness between man and man, and more particularly between the individual and government . . .," to saying, as was done in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 that it "embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." In Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, dealing with administrative action, the Court at page 520, 64 S.Ct. at page 650 said:

> To be sure, that review comes after the order has been promulgated; and no provision for a stay is made. But as we have held in Yakus v. United States, *supra* [321 U.S. 414, 64 S.Ct. 660, 88 L.Ed.2d 834], that review satisfies the requirements of due process. As stated by Mr. Justice Brandeis for a unanimous Court in Phillips v. Commissioner, 283 U.S. 589, 596–597 [51 S.Ct. 608, 511, 75 L.Ed. 1289]: "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Springer v. United States, 102 U.S. 586, 593 [26 L.Ed. 253]; Scottish Union & National Ins. Co. v. Bowland, 196 U.S. 611, 631 [25 S.Ct. 345, 351, 49 L.Ed. 619].

As was pointed out in Torres v. New York State Department of Labor, 321 F.Supp. 432 (S.D.N.Y.1971),[4] at page 437:

> The concept of due process does not involve a set of fixed, unalterable principles. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the public interest that has been affected by governmental action." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). See Goldberg v. Kelly, supra, 397 U.S. [254,] at 263, 90 S.Ct. 1011, at 1018 [, 25 L.Ed.2d 287].

■ The touchstones in the area of procedural due process and the test of whether one has been afforded due process is one of fundamental fairness and reasonableness in the light of the total circumstances. Joint Anti-Fascist Refugee Committee v. McGrath, *supra;* Whitfield v. Simpson, 312 F.Supp. 889 (E.D.Ill.1970); Sigma Chi Fraternity v. Regents of University of Colorado, 258 F.Supp. 515 (D.C.Cal.1966); Due v. Florida A & M, 233 F.Supp. 396 (D.C. Fla.1963).

■ The demands of due process do not require a hearing at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the request hearing is held before the final order becomes effective. Inland Empire Dist. Council v. Millis, 325 U.S. 697, 710, 65 S.Ct. 1316, 89 L.Ed. 1877; Bowles v. Willingham, 321 U.S. 503, 519–521, 64 S.Ct. 641, 88 L.Ed. 892; Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624.

The payment of sums awarded under the Workmen's Compensation Act is entirely different from payment of welfare. As was pointed out in Torres v. New York State Department of Labor, *supra*, Workmen's Compensation payments like unemployment compensation differ from relief in that each are made as a matter of right, not on a needs basis, but only while the worker is involuntarily unemployed. They are based

---

4. Cert. denied 405 U.S. 940, 92 S.Ct. 1185, 31 L.Ed.2d 228.

on wages previously received and are completely unrelated to need. [321 F. Supp. 437.]

This is not a case of "brutal need" or "overpowering need" which existed in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. The Court pointed out in the *Torres case*, an employee cut off from Workmen's Compensation "may qualify for welfare payments, if he can show the requisite need. Thus the worst possible effect of the procedure which plaintiffs attack as being lacking in due process would be that for a period of a few weeks until a hearing is held a claimant who is finally determined to be eligible for payments would have to live on his accumulated savings or, if he had no savings, would have to resort to relief. If he is eventually found to be eligible he will receive retroactively all the payments to which he was entitled." Here, unlike in *Torres* where there was a right to recover back any sums improperly paid, no such right exists under the Workmen's Compensation Act. In addition, the Commission may assess all of the costs, including a reasonable attorney's fee for employee's counsel, against an insurer or employer who brings any such proceeding without reasonable grounds.

■ The award is during incapacity. When incapacity ceases, the award ceases. Let us suppose there was an award for the lifetime of the injured. To be sure, due process does not mean the award could not be terminated upon the death of the employee without a full-scale hearing. Under the award, when the employee regains capacity the award terminates. If plaintiff's contentions are correct, if an employee regains capacity to return to employment, or even if he obtains other employment, employer or insurer could not stop payments under the award until there was notice and an opportunity for him to be heard. Payments made between the time of his regaining capacity are not recoverable by the employer or insurer. As the Court pointed out in Cafeteria & Rest. Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230, due process does not require a trial-type hearing in every conceivable case of government impairment of private interest, nor where an official may have abused his discretion. "It is not a requirement of due process that there be judicial inquiry before discretion can be exercised. It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." Ewing v. Mytinger & Casselberry, 339 U.S. 594, 599, 70 S.Ct. 870, 873, 94 L.Ed. 1088; Phillips v. Commissioner, 283 U.S. 589, 596–597, 51 S.Ct. 608, 75 L.Ed. 1289; Bowles v. Willingham, 321 U.S. 503, 520, 64 S.Ct. 641, 88 L.Ed. 892; Yakus v. United States, 321 U.S. 414, 442–443, 64 S.Ct. 660, 88 L.Ed. 834.

Plaintiff attempts to equate Workmen's Compensation payments with welfare benefits and affix to each of them a label of "brutal need." But, as the Court pointed out in Richardson v. Belcher, 404 U.S. 78, 83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231, discrimination "between two like classes cannot be rationalized by assigning them different labels, but neither can two unlike classes be made indistinguishable, by attaching to them a common label." *Torres* held "brutal need" could not be equated with Unemployment Compensation. Neither can it be equated with Workmen's Compensation.

■ The situation here is much like that referred to in Mr. Justice Black's dissent, joined in by Chief Justice Burger, in *Goldberg* [397 U.S. 254, 277, 90 S.Ct. 1011, 25 L.Ed.2d 287] where one party owing another money ceases payment. The payee has a right of action against payor, but there is no provision in law that before payor ceases payments, he must give notice and an evidentiary hearing be held. Here employee has an award of weekly compensation by agreement between the parties, approved by the Industrial Commission, to continue during incapacity. Power of enforcement is not in the Commission. The Commission can order payment, but

cannot enforce it. Enforcement is with a court of record. Requesting a hearing on an alleged change of condition, and the fixing of a time for it, do not invalidate or change the award. Employee can still proceed with the same action for collection which he would take if the employer or insurer merely ceased payments without asserting any change in condition or making a request for a hearing.

For the reasons hereinabove stated, the complaint and this action are dismissed.

MERHIGE, District Judge (dissenting).

Because I conclude that my fellow judges have this day by their conclusions permitted the continued violation of constitutional rights of the plaintiff and the class which he represents, I must respectfully dissent from their views.

The matter comes before the Court without benefit of an evidentiary hearing. Nevertheless the pleadings, the answers to the interrogatories, the stipulations entered into between the parties, and the admissions at the bar of the Court during argument in this cause, in my opinion, establishes the following:

This is an appropriate class action and the named plaintiff is representative of that class of persons who, upon sustaining an injury while in the course of their employment, are recipients of workmen's compensation benefits in accordance with the provisions of Virginia's Compensation Act, Title 65, Code of Virginia, as amended. Rule 23 F.R.C.P.

The named plaintiff sustained an injury which entitled him to Workmen's Compensation payments in the amount of $40.80 per week commencing on March 23, 1971, as evidenced by a Memorandum of Agreement entered into between the plaintiff and the defendant insurance company acting in place of his employer, and approved by the Industrial Commission of Virginia on March 30, 1971. Within less than three months thereafter these payments were discontinued by reason of Aetna having filed an application for hearing before the Industrial Commission of Virginia, alleging that plaintiff had undergone a change in condition and was physically capable of resuming his employment. Approximately seven weeks thereafter a finding of the Commission resulted in plaintiff receiving the suspended payments and the continuation of same on a weekly basis. Within less than a month of a finding by the Commission that Dillard was entitled to the accrued compensation and a resumption of the directed compensation, Aetna once again filed an application for hearing alleging a change of condition, and payments once again were suspended and remained so until, upon agreement of Aetna and Dillard, the application for hearing was dismissed and compensation resumed.

The twice accomplished cessation of compensation was based upon the then existing Rule 13 of the defendant Commission, promulgated in accordance with § 65.1–18 of the Code of Virginia (1940).[1] The majority has set out the rule in toto which, as stated by the majority, was amended effective April 2, 1972, by adding the following sentence:

All applications by an employer or insurer shall be under oath and shall not be deemed filed and benefits shall not be suspended until the supporting evidence which constitutes a legal basis for changing the existing award shall have been reviewed by the Commission, or such of its employees as may be designated for that purpose, and a determination made that probable cause exists to believe that a change in condition has occurred.

It is this rule which is under constitutional attack as allegedly violating the due process clause of the Fourteenth Amendment to the Constitution of the United States.

---

1. This section permits the Commission to promulgate rules not inconsistent with Act for carrying out its provisions.

My colleagues suggest that the amendment to the rule was brought about to preclude the cessation of payment of benefits upon an assertion by an employer of a change in condition, and they suggest that neither the statutory scheme nor the amended rule "make any provision for the employer or insurer to cease payments." A reading of the rule clearly shows a contemplation that the benefits will be suspended upon compliance with the rule prior to the workman being given any opportunity to be heard or indeed even be advised that an application by his employer or insurer had been filed. The Industrial Commission itself, in its motion for summary judgment, describes the effect of Rule 13 as to "require that an *ex parte* inquiry be held by the Commission to determine whether probable cause exists for a change in the award before any benefits may be temporarily suspended pending a full hearing . . ."

Much is stated in the majority opinion as to what the rule allegedly does not do; the material fact, however, is that what it does do is to deprive the plaintiff and the members of his class of a property right without due process of law.

The Legislature of Virginia intended to make the Act exclusive in the industrial field, so that in the event of an accident the rights of all those so engaged would be governed solely thereby.

As pointed out by the majority, under the Act both employer and employee surrender former rights and gain certain advantages. Under the Act there is read into every contract of employment within the purview of the Act the obligation of an employer to pay specified compensation for injury to an employee arising out of his employment, and for an employee in consideration thereof to forego certain of his common law remedies.[2]

A provision seldom invoked permits an employee prior to an accident to give notice of his intention not to be covered by the Act. The answers to the interrogatories fail to indicate the total number of covered employees in the State, but do indicate that approximately 900 employees of a total of 75,919 employers chose to do so in 1971.

The Legislature of Virginia has accorded to the Industrial Commission, the promulgators of the rule in question, the power to enforce the attendance of parties in interest and witnesses, as well as the production and examination of books, etc.

While the majority declares the questioned rule not to be violative of the constitutional right of due process, they describe the matter as one "where[in] one party owing another money ceases payment. The payee has a right of action against payor, but there is no provision in law that before payor ceases payments, he must give notice and an evidentiary hearing be held." (Majority opinion, p. 77.)

If the suggestion be that the Fourteenth Amendment to the Constitution of the United States does not come into play by virtue of a lack of State action, a perfunctory study of Virginia's statutory scheme as to the conduct of the parties in the field of workmen's compensation produces an inextricable and manifest enmeshment of a State agency to such a significant extent as to preclude any viable argument to the contra. We do not deal here solely with individual invasion of individual rights outside the State's responsibility under the Fourteenth Amendment. See Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963) and cases cited therein.

We deal here with a statewide regulation enacted by a state-constituted commission "functioning pursuant to a statewide policy and performing a state function." Moody v. Flowers, 387 U.S. 97, 102, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967); Goldberg v. Kelly, 397 U.

---

2. Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946); Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575 (1951).

S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

It appears to me that the majority puts much too much stress on the fact that an aggrieved workman ultimately receives a hearing. While it is quite true that the answers to the interrogatories indicate that the average time between the filing of an application for review of the award on an alleged change in condition and the hearing by the Commission is one month, the same answers indicate that the time between an application for review and a hearing on any disagreement as to the continuance of weekly payments after same has been approved can run anywhere from one to eight months.

It is a basic principle of due process that an individual be given an opportunity for a hearing at a meaningful time and in a meaningful manner. In addition, the hearing must be appropriate to the nature of the case. See Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). Except for extraordinary situations where some valid governmental interest is at stake, there is no justification for the postponement of a hearing until after the event has transpired. See Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970).

I have searched in vain for a mention in the majority opinion as to what governmental interest is so important as to outweigh the rights of the plaintiff class to avoid loss prior to procedural due process, for the extent to which procedural due process must be afforded is influenced by the extent to which one may be condemned to suffer grievous loss. The United States Supreme Court has consistently stated that in consideration of what procedures due process may require under any given set of circumstances, one must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been af-fected by governmental action. See Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). The governmental concern which prompted the enactment of Virginia's Workmen's Compensation laws has been referred to time and time again by the Supreme Court of Appeals of Virginia. One of the primary purposes is to protect the employee so as to provide compensation to him for the loss of his opportunity to engage in work when his disability is occasioned by an injury suffered from an accident arising out of and in the course of his employment. The Act itself is to be liberally construed in harmony with its humane purposes. See Burlington Mills Corp. v. Hagood, 177 Va. 204, 13 S.E.2d 291 (1941); Rust Engineering Co. v. Ramsay, 194 Va. 975, 76 S.E. 2d 195 (1953). Indeed the Legislature of Virginia was so concerned with the humane purposes of its Act that even an agreement reached between an employee and an employer may be approved only when the Industrial Commission, or any member thereof, is clearly of the opinion that the best interests of the employee . . . will be served thereby. See Virginia Code § 65.1–93, as amended.

While the majority makes no mention of the precise nature of the governmental function or interest involved, it was suggested during argument that the giving of notice and a prior hearing would result in the need for additional employees to be retained by the defendant Commission. The answer is simple —such a statement is not supported by the evidence, and even if it could be the constitutional requirement of due process was in particular designed to protect the particular interest of the person whose rights are being affected, and was never intended to promote efficiency or to accommodate all possible interests. See Goldberg v. Kelly, *supra*. See also, Fuentes v. Shevin et al., 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (June 12, 1972).

It would seem that, if anything, governmental interests would be promoted

by affording recipients of workmen's compensation their pre-termination evidentiary hearing, or at the very least an opportunity to submit documentary evidence prior to any cessation of benefits to which it has been adjudicated by the Commission they are entitled. The fact that the law of Virginia precludes any recovery of any payments made by an employer, to me simply points up the concern the Legislature had for the injured employee.

It is suggested that "the worst possible effect of the [instant] procedure which plaintiffs attack as being lacking in due process would be that for a period of a few weeks until a hearing is held a claimant who is finally determined to be eligible for payments would have to live on his accumulated savings or, if he had no savings, would have to resort to relief." [3] While there is no evidence to support any such supposition, the few weeks referred to by the majority insofar as the named plaintiff is concerned stretched into seven before the Commission made a finding resulting in the resumption of weekly payments. The very suggestion that a member of the plaintiff class would have to resort to relief appears to me to point up that the governmental interest involved would be better served by the simple practice of giving notice and affording a hearing prior to cessation of benefits.

Judges need not blind themselves to what they know as men. I cannot help but believe that the average working man in Virginia, who has sustained an injury resulting in a substantial reduction of his weekly income, suffers a grave and immediate loss. The cessation of delivery of what may well be the necessities of life to a working man with a family is seldom preceded by any degree of formality. Where no valid State interest is involved, a court of all our institutions ought not be a party, even peripherally, of approving what on its face is manifestly unfair. It should be constantly kept in mind that the situation to which the plaintiff class addresses itself only arises subsequent to a determination that the particular member of the plaintiff class has been injured in his work and is entitled to compensation. I can think of no reason why notice and a hearing should not be given to the very person whom the Industrial Commission, by its approval of the original agreement for compensation, has found entitled to same under the law. The very thought that the *ex parte* proceeding permitted by Rule 13 may result in a cessation of milk delivery, or electric power, or fuel to a working man and his family, shocks my conscience.

I have no doubt that this is a case of "brutal need" similar to that in Goldberg v. Kelly, *supra*, yet I must say that the burden of showing such is, in my opinion, not necessary to find the rule in question violative of the Constitution. In Fuentes v. Shevin, *supra*, Mr. Justice Stewart succinctly points out that the Court's conclusions in *Goldberg* in no way marked a departure from established principles of procedural due process. *Goldberg* and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, simply re-establish what has always been the law to the effect that due process requires an opportunity for a hearing before a deprivation of property takes effect. While, as Mr. Justice Stewart points out, the primary issue in *Goldberg* was the form of hearing demanded by due process before determination of welfare benefits, hence the importance of welfare was directly relevant to that question just as in our instant case the relative weight of the claimant class' property interest is relevant to the formal notice and hearing which I believe is required by due process.

We deal here with established rights. Recipients of workmen's compensation are not beneficiaries of a handout. They are entitled to the funds they receive. Indeed the United States Supreme Court

3. This language was adopted by the majority from the language of the Court in

Torres v. New York State Dept. of Labor, 321 F.Supp. 432, 437.

has held unconstitutional a determination by a State to suspend one's driver's license prior to notice and hearing. See Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1970).

One further comment on the majority's suggestion that the rule is drafted in such a way as to discourage unwarranted applications for cessation of payments by reason of that portion of the rule which permits the assessment of costs and unreasonable attorneys' fees against an employer. That portion of the rule does not come into effect until costs and attorneys' fees have been incurred by virtue of defending a proceeding "without reasonable grounds." It seems to me while the theory may sound well, as a practical matter it is useless. In the first place a workmen's compensation recipient, as it now stands under the rule, would not even know an application had been filed for cessation of his payments unless and until that fact occurred, and by that time the Commission has already, pursuant to its rule, found probable cause, which I believe can reasonably be interpreted as reasonable grounds. I can hardly see the threat of assessment of attorneys' fees or costs being of any consequence in the instant situation.

I respectfully suggest that my colleagues' dependence on Torres v. New York State Dept. of Labor, supra, n. 3, is misplaced, for first, that Court dealt with a prospective loss of government funds, whereas in our instant case no State funds are involved at all; and, in addition, the claimant made a weekly report to the State office. Provision was also made for one to be interviewed with respect to any new information which might affect his eligibility for unemployment compensation. In our instant case a claimant is given no opportunity to be heard until after the fact. The Torres Court, finding an absence of "brutal need" which it interpreted as the basis for decision in Goldberg, supra, found that the governmental interest involved in its case outweighed plaintiff's claim. While I conclude from

Fuentas, supra, that a reliance on a "brutal need" standard is misplaced, as I have endeavored to point out heretofore, the majority, while finding no brutal need situation in our instant case, conspicuously refrains from any reference to a superior governmental interest, a factor which I deem to be required.

Due process requires both notice and hearing prior to the deprivation of a right. Any exception can be justified only by reason of a State interest so strong as to permit a deviation from the requirement. Such a situation is not present in the instant case and no rationalization can make it so. The majority's actions cannot be justified on the ground that the members of plaintiff's class will ultimately receive notice and a hearing, for no court has ever adopted the general proposition that a wrong may be done simply because it can be undone.

I respectfully record my dissent.