James SILAS, on behalf of himself and
all others similarly situated

v.

Paul J. SMITH et al.

Civ. A. No. 71–2965.

United States District Court,
E. D. Pennsylvania.

July 30, 1973.

**1188**

Andrew S. Price, Harold I. Goodman, Bruce E. Endy, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Lawrence T. Hoyle, Jr., Thomas J. Oravetz, Deputy Attys. Gen., Harrisburg, Pa.; Michael Minkin, Asst. Atty. Gen., Lowell A. Reed, Jr., Henry H. Janssen, Philadelphia, Pa., for defendants.

Before JAMES HUNTER, III, Circuit Judge, and LUONGO and MASTERSON, District Judges.

## OPINION

LUONGO, District Judge.

Plaintiff, James Silas, has instituted this class action suit seeking to have declared unconstitutional § 413 of the Workmen's Compensation Act of Pennsylvania. Also under attack are certain administrative practices, allegedly fostered by § 413,[1] relating to the suspension and withholding of payments to injured employees without prior notice or hearing. It is charged that this section of the Act and the administrative practices violate plaintiff's Fourteenth Amendment right to due process and constitute violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983.[2]

### The Statutory Scheme

The Pennsylvania Workmen's Compensation Act (Act), 77 P.S. § 1 et seq., provides a schedule of compensation for all employees who suffer an "injury . . . by an accident, in the course of . . . employment." 77 P.S. § 431. The Act provides for an arrangement between employer and employee, under which, in return for immunity from suit on common law fault grounds, the employer bears the cost, ultimately passed on to the consumer, of work-connected injuries regardless of fault, rather than have the cost of such injuries borne by public funds or by the employee himself. The Act further provides a system of insurance that assures the injured employee that his employer will be able to pay the statutory scheme of compensation and costs.

Neither the employer nor the employee is bound to accept the provisions of the Workmen's Compensation Act, but acceptance by both is conclusively presumed unless, at the time an employment contract is entered into, an express statement is made by either party to the other that the provisions of the Act are not intended to apply and that a copy of such written statement, accompanied by proof of service upon the other party, is filed with the Department of Labor and Industry. 77 P.S. §§ 461, 462.

1. § 413, 77 P.S. § 774, provides as follows: "The filing of a petition to terminate or modify a compensation agreement or award as provided in this section shall operate as a supersedeas, and shall suspend the payment of compensation fixed in the agreement or by the award, in whole or to such extent as the facts alleged in the petition would, if proved, require."

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Following an accident that is covered under the Act, two methods for the securing of benefits become available to a claimant. The first is a voluntary procedure by which the injured employee and his employer (or the employer's insurance carrier) enter into an Agreement for Compensation Payable. 77 P. S. § 731. This agreement must be approved by the Pennsylvania Department of Labor and Industry. 77 P.S. § 731. The alternative method for obtaining benefits, assuming failure to enter into a voluntary agreement, is by the filing of a Claim Petition with the Pennsylvania Workmen's Compensation Board. After an evidentiary hearing, the Board may award benefits to the petitioning claimant. An appeal may be taken by any party from any action of the Board on matters of law. 77 P.S. § 872.

The amount determined to be due either under an agreement by the parties or an award by the Board may be voluntarily modified or terminated by a supplemental agreement, approved by the Department of Labor and Industry, if the incapacity of an injured employee has increased, decreased or terminated. 77 P.S. § 732.

Where the parties fail to agree to the terms of a Supplemental Agreement, the Workmen's Compensation Board, upon petition and hearing, may modify or terminate the existing agreement or award. 77 P.S. § 772. The party petitioning for such a modification or termination has the burden of proving that the disability which was the subject of the prior agreement or award has changed in a manner that justifies the relief sought by the petition. 77 P.S. § 772.

Pursuant to § 413, the filing of the Petition to Terminate or Modify a Compensation Agreement or Award operates as a supersedeas which automatically suspends "the payment of compensation fixed in the agreement or by the award, in whole or to such extent as the facts alleged in the petition would, if proved, require." It is this provision, together with the practice of pre-petition termination, and the fact that an employer or insurance carrier seeking to modify or terminate the compensation payment need not notify the recipient before the filing of the petition, which form the basis of plaintiff's constitutional attack on the Pennsylvania Workmen's Compensation system.

### The Silas Suit

The relief which Silas seeks in this complaint is (1) a declaration of the unconstitutionality of § 413 as originally enacted;[3, 4] (2) injunction against further

---

3. After this suit was instituted, § 413 was amended, effective May 1, 1972, to provide (77 P.S. § 774): "The filing of a petition to terminate or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall operate as a supersedeas, and shall suspend the payment of compensation fixed in the agreement or by the award, in whole or to such extent as the facts alleged in the petition would, if proved, require only when such petition alleges that the employe has returned to work at his prior or increased earnings or where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect which is based upon an examination made within fifteen days of the filing of the petition. In any other case, a petition to terminate or modify a compensation agreement or other payment arrangement or award as provided in this section shall not automatically operate as a supersedeas but may be designated as a request for a supersedeas, which may then be granted at the discretion of the referee hearing the case. A supersedeas shall serve to suspend the payment of compensation in whole or to such extent as the facts alleged in the petition would, if proved, require. The referee hearing the case shall rule on the request for a supersedeas as soon as possible and may approve the request if proof of a change in medical status, or proof of any other fact which would serve to modify or terminate payment of compensation is submitted with the petition. The referee hearing the case may consider any other fact which he deems to be relevant when making the decision on the supersedeas request and the decision shall not be appealable."

4. § 413(b), 77 P.S. § 774.1, effective May 1, 1972, provides: "Any insurer

suspensions or terminations pursuant to § 413 as well as pre-petition terminations; (3) recovery of benefits previously so withheld; and (4) an attorney's fee. The matter has been presented to this court on final hearing, the parties having entered into extensive stipulations of facts. From the entire record we find the following facts.

James Silas sustained an injury while employed by defendant, Haverstick-Borthwick Company (H–B). On July 2, 1969, Silas and defendant, Pennsylvania Manufacturers' Association Insurance Company (PMAIC), H–B's Workmen's Compensation insurance carrier, entered into an "Agreement for Compensation for Disability or Permanent Injury." The Agreement, which was subsequently approved on November 7, 1969, by the Pennsylvania Department of Labor and Industry, provided that Silas was to be paid $60 per week, the maximum weekly payment for total disability allowable under the Pennsylvania Workmen's Compensation Act, plus medical and hospital expenses, and was "subject to modification or termination by Supplemental Agreement, Order of the Workmen's Compensation Board, or Final Receipt."

Almost two years later, on June 28, 1971, Silas was examined by a doctor employed by PMAIC. The doctor concluded that Silas was then suffering from a permanent 50% partial disability, and that he could perform work of a sedentary nature, i.e. checker, sorter, or elevator operator. The doctor informed Silas of the conclusions he had reached as a result of the examination.

Apparently as a result of that examination, on July 2, 1971, PMAIC submitted to Silas a "Supplemental Agreement for Compensation for Disability or Permanent Injury," reducing Silas' payments to $45 per week, the maximum amount provided under the Act for partial disability. Silas refused to execute the Supplemental Agreement before conferring with an attorney.

On July 9, 1971, PMAIC, without prior notice or hearing, stopped making payments to Silas, asserting that his disability was now undetermined. This procedure (referred to in this proceeding as pre-petition termination) was not authorized by any provision of Pennsylvania statutory law or regulations. A few days later, counsel for plaintiff communicated with PMAIC by telephone, advising that Silas did not agree that he was only partially disabled. He demanded that the sixty dollar payments be restored pending filing by PMAIC of a reduction petition with the Pennsylvania Workmen's Compensation Board, and that after filing, payments should continue to be made in the amount of $45 per week until the matter had been resolved by a Pennsylvania Workmen's Compensation Referee. PMAIC refused the demand and denied Silas' entitlement to reinstatement of the weekly Workmen's Compensation benefits.

On August 2, 1971, PMAIC filed a "Petition for Termination or Modification of Agreement or Award on Grounds of Changed Disability" with the Pennsylvania Workmen's Compensation Board. The Board, pursuant to statute, 77 P.S. § 775, gave Silas notice that the petition had been filed and enclosed a copy. This was plaintiff's first notice [5]

who suspends, terminates or decreases payments of compensation without submitting an agreement or supplemental agreement therefor as provided in section 408, or a final receipt as provided in section 434, or without filing a petition and either alleging that the employe has returned to work at his prior or increased earnings or where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed

by the department to that effect which is based upon an examination made within fifteen days of the filing of the petition or having requested and been granted a supersedeas as provided in this section, shall be subject to penalty as provided in section 435."

5. There is no requirement under the Act that the person filing the petition serve the other party with a copy. The Department of Labor and Industry is

that PMAIC had filed a petition to modify or terminate. Shortly thereafter, plaintiff filed an answer to the petition, denying that he was no longer totally disabled.

On December 13, 1971, plaintiff instituted this suit as a class action.[6] Shortly thereafter, PMAIC, asserting that it had made a mistake of fact and law, paid to plaintiff, at the rate of $45 per week, the compensation which had been withheld from July 2 to December 13, 1971. PMAIC has continued to make weekly partial disability payments of $45 to the present.

### Abstention

Preliminarily, PMAIC and H–B urge this court to abstain from deciding the constitutional issue presented in this case because of "the state-federal conflicts in this situation, . . . the availability of a presumably capable state forum for all Workmen's Compensation claimants, . . . the fact that all claimants who could raise the Constitutionality of the prior Section 413 are either already parties in that forum or possess confession of judgment rights against the employers or insurance companies involved, and . . . the fact that the unamended Section 413 may be already retroactively amended out of existence depending on a decision on state law construction of statutes . . . ." [Defendants' brief p. 31]

We do not consider this an appropriate case for abstention. Abstention is proper only where the issue of state law or statutory interpretation is unclear, and where an interpretation of the unsettled state law by a state court may remove the taint of possible unconstitutionality. See Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Com'n,

D.C., 319 F.Supp. 407 (1970), aff'd, 3 Cir., 465 F.2d 237 (1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973). There is no dispute but that the statute under attack in the instant case means just what it says, i. e. that the filing of a petition to terminate or modify operates as a supersedeas. As to the suggestion that by reason of a state decision, the original § 413 may be retroactively amended out of existence, defendants have not pointed to any case pending in the state court in which that is an issue. Failing such a showing, this court must, in view of the substantial number of claimants that have been affected by the operation of original § 413, proceed to a decision on the merits.

### Section 413

Plaintiff's attack on § 413 must be considered in two lights. On the one hand, suit has been brought against state officers charged with the administration of the Act, and on the other hand, purely private parties, plaintiff's employer and its insurance carrier, have been sued. Because of the different status of the parties defendant, different legal principles are applicable. Thus, from the standpoint of Fourteenth Amendment violation and of § 1983 liability, plaintiff's claims will be resolved in light of the differing status held by the two classes of defendants. See Lucas v. Wisconsin Electric Power Co., 466 F.2d 638 (7th Cir. 1972).

Unquestionably, the state officials act "under color of state law" within the meaning of 42 U.S.C. § 1983 when they administer the Act. Lucas v. Wisconsin Electric Power Co., *supra*. As to the employer and its insurance carrier, however, in order to find a violation of § 1983, it must first be determined that these private companies acted "under

---

charged with the responsibility of serving the petition, together with notice that the petition will be heard by the Board or a Referee. 77 P.S. § 775.

6. At the hearing thereon, the Motion for Declaration of Class Action was with-

drawn without prejudice to the right to plaintiff to seek reinstatement of the Motion in the event that he is successful in obtaining a declaration of invalidity, or injunctive relief, and such declaratory or injunctive relief should prove not to be completely effective.

color of state law" when they filed the modification petition, and if they did, it must then be considered whether what they did pursuant to § 413 constituted a violation of plaintiff's constitutional rights.

(a) *State Officials—Due Process.*

■ As pointed out before, plaintiff's claim is that the supersedeas provision of § 413 violates his Fourteenth Amendment due process right to pre-termination notice and hearing. The argument is based, in the main, on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970). Goldberg v. Kelly involved the right to a prior notice and hearing where eligibility to receive welfare payments, drawn from public funds, was challenged. The claimant was, by definition, faced with a "brutal need" for the statutory entitlement. Denial of those funds, pending a hearing, deprived him "of the very means by which to live while he wait[ed]." *Id.* at 264, 90 S. Ct. at 1018. Unlike the welfare recipient in *Goldberg,* the Workmen's Compensation claimant may well have other sources available to supply his daily needs, e. g. unemployment compensation benefits, personal resources and savings, and finally, potential eligibility for welfare payments, serving to insulate the injured worker from any condition of "brutal need." Dillard v. Industrial Commission of Virginia, 347 F.Supp. 71 (E.D.Va.1972), vacated and remanded for consideration of mootness, 409 U.S. 238, 93 S.Ct. 566, 34 L.Ed.2d 444 (1972); Torres v. New York State Department of Labor, 321 F.Supp. 432 (S. D.N.Y.1971), vacated and remanded, 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), prior decision adhered to on remand, 333 F.Supp. 341 (S.D.N.Y.1971), aff'd, 405 U.S. 949, 92 S.Ct. 1185, 31 L. Ed.2d 228 (1972), reh. denied, 410 U.S. 971, 93 S.Ct. 1446, 35 L.Ed.2d 707 (1973).

Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972), also relied upon by plaintiff, does not aid him. *Fuentes* dealt with property, (a stove and bed) in which plaintiff had at least the right of possession. The court there held that "[t]he constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions." *Id.* at p. 80, 92 S.Ct. at p. 1994. The possessory interest in property emphasized in *Fuentes* is absent here. What is here involved is a contractual (although sanctioned by statute) claim to benefits which the other party to the contract disputes. As such, this interest is indistinguishable from the interest of the recipient of funds in any commercial situation in which periodic payments are terminated pending resolution of the underlying dispute. Accordingly, *Fuentes* does not, in our view, control.

In sustaining the contention that the claimant in *Goldberg* was entitled to notice and hearing prior to the termination of his welfare benefits, the Supreme Court stated 397 U.S. at pages 262–263, 90 S.Ct. at page 1017:

"The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 [,71 S.Ct. 624, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895 [, 81 S.Ct. 1743, 6 L.Ed.2d 1230] (1961), 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' See also Hannah v. Larche, 363 U.S. 420, 442 [, 80 S.Ct. 1502, 4 L.Ed.2d 1307] (1960)."

The governmental purpose which prompted enactment of the Pennsylvania

Workmen's Compensation law is the substitution of a method of accident insurance in the place of the common law rights and liabilities of both employer and employee. Vescio v. Pennsylvania Elec. Co., 336 Pa. 502, 9 A.2d 546 (1940); Rudy v. McCloskey & Co., 152 Pa.Super. 101, 30 A.2d 805 (1943), aff'd, 348 Pa. 401, 35 A.2d 250 (1944). By placing upon the employer the cost of Workmen's Compensation insurance coverage, ultimately reflected as a cost of production to the consumer, the state has struck a balance between employer and employee. This balance should not readily be disturbed. To force employers to pay benefits to compensation claimants without any real possibility of recovering payments determined to have been improperly made [7] could seriously increase the anticipated costs of the program which the employers had relied upon, and could well encourage employers to reject the Act. See Hartwell v. Allied Chemical Corporation, 457 F.2d 1335 (3d Cir. 1972). Compared to that possible adverse effect upon the Workmen's Compensation scheme, the private interest of the employee in having his payments continued during a period of dispute does not tip the due process scales in the employee's favor. Accord, Dillard v. Industrial Commission of Virginia, *supra.*

The essence of plaintiff's final argument is that the automatic supersedeas feature of § 413, because of its *ex parte* nature, deprives claimants of their right to cross-examine the party seeking modification and empowers the petitioning party to act in its own behalf as judge of its decision to terminate benefits.

We see no constitutional impediment in either of these circumstances. Keeping in mind the private nature of the dispute between these parties, the situation here is no different than "that fre-

quently encountered when two parties have an ongoing legal relationship that requires one party to make periodic payments to the other. Often the situation arises where the party 'owing' the money stops paying it and justifies his conduct by arguing that the recipient is not legally entitled to payment." Goldberg v. Kelly, *supra,* 397 U.S. at p. 277, 90 S.Ct. at p. 1025 (Black, J., dissenting). Due process does not require the state to provide a system under which the merits must be resolved before the payments are suspended. It is sufficient, in our view, that the state provides a forum to which the disagreeing claimant may go to have the merits of his claim resolved and where, if he is successful, he will be able to obtain payment in full, including the payments which were denied him pending decision on the merits.

In sum, the governmental and employer interests predominate over the interests of the claimant in this Workmen's Compensation context. The statutory scheme provides insured means to pay the injured claimant, if he is ultimately successful. There are no means provided under the original § 413 to insure repayments of amounts ultimately determined to have been improperly made to the injured claimant.[8] Since employers are expected to bear the costs of accidents as a cost of production, they should be warned of the elements of cost in advance and be able to make provision for them. This consideration, coupled with the fact that the Act provides an adequate procedure for the resolution of disputes, and means of insuring payment of benefits determined to be due, requires that plaintiff's claim of unconstitutionality be rejected.

(b) *PMAIC and Haverstick-Borthwick Co.—Under Color of Law.*

■ Plaintiff's contention that the private party defendants, PMAIC and

---

7. A provision in the 1972 amendments to the Workmen's Compensation Act 77 P.S. § 999, has created a fund to reimburse an insurance carrier for benefits that are paid out where a supersedeas has initially been denied and upon final outcome of the proceedings it is determined that benefits were not in fact payable.

8. *Cf.* footnote 7, supra.

H–B, have deprived him of his constitutional rights to due process under color of state law, fails on two grounds. First, as we have already pointed out, the automatic supersedeas provisions of § 413 do not offend due process, consequently plaintiff has not shown a violation of constitutional rights. Second, plaintiff's § 1983 claim falls because these private party defendants have not acted "under color of" state law within the meaning of § 1983.

■ The "under color of" provision of 42 U.S.C. § 1983 encompasses only such private conduct as is supported by state action. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). A private person does not act under color of state law unless he derives some "aid, comfort, or incentive," either real or apparent, from the state. *Id.* at 211–212, 90 S.Ct. 1598 (separate Opinion of Mr. Justice Brennan). The support provided by the state must be significant. Moose Lodge v. Irvis, 407 U.S. 163, 173, 176–177, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

Plaintiff argues that, clothed with the power vested in it by § 413, PMAIC is permitted "to do that which it otherwise would be without power or authority to do, i. e. suspend, reduce, or terminate the amount of compensation payable." [Plaintiff's Reply Brief, p. 4] We disagree. The parties had entered into an agreement for the payment of disability benefits. Absent a statute, the party required by the terms of the agreement to make the payments had the power to stop making those payments whenever it felt they were no longer required under the terms of the agreement, i. e. when disability ended. If the other party disagreed he was free to institute suit to compel resumption of the payments and payment of installments wrongfully withheld. Section 413 did nothing more than spell that process out.

As pointed out above, the Workmen's Compensation scheme is one involving private parties, employers and their employees. The state provides only the administrative vehicle through which Workmen's Compensation claims are processed and resolved. By providing the machinery, the state has not "so far insinuated itself into a position of interdependence with [PMAIC and H–B] that it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961).

Since the challenged statute does not give the private defendants any power which they did not otherwise possess, and since the state is not so implicated in the operation of § 413 as to be a participant in the practices of the private defendants, the element of "state action" is lacking as to the actions of PMAIC and H–B.

*Pre-Petition Termination*

Plaintiff's final argument relates to the practice of pre-petition termination or modification of compensation benefits. It is undisputed that defendant PMAIC has engaged in the practice of terminating or modifying benefits of compensation recipients prior to the filing of a § 413 petition. Plaintiff argues that this practice "is as constitutionally defective, on procedural due process grounds as is Section 413 itself." [Plaintiff's Brief, p. 26]

■ The deficiency in plaintiff's argument is that he points to no statute or regulation which sanctions the practice of pre-petition termination. Had the offending parties been state officials, the practice would, no doubt, be considered a misuse of statutory power. See, e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Plaintiff has not demonstrated that state officials were aware of, or had somehow been involved in this practice, consequently his claim, directed toward these purely private defendants, must be rejected. See 27 Puerto Rican Migrant Farm Workers v. Shade Tobacco Growers Agricultural Association, Inc., 352 F.Supp. 986, 993 (D.Conn.1973). As Moose Lodge v. Irv-

is, 407 U.S. 163, 176–177, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972), makes clear, "to make the State in any realistic sense a partner or even a joint venturer" the state must foster or encourage the proscribed activity. Plaintiff's failure to present some evidence that pre-petition termination is encouraged or sanctioned by § 413, requires the conclusion that the practice is purely private, not supported in the least by the challenged statute. PMAIC's and H–B's action in terminating or modifying compensation benefits is, therefore, not conduct "under color of" state law, within the meaning of 42 U.S.C. § 1983.

### Penalty and Counsel Fee

Two final matters remain for disposition.

Plaintiff urges that we penalize PMAIC and H–B for the pre-petition termination of his benefits. It will be recalled that PMAIC had submitted to Silas a Supplemental Agreement on July 2, 1971, calling for maximum partial disability payments after PMAIC's doctor had found Silas 50% disabled. When Silas refused to sign, PMAIC terminated his payments on July 9, 1971. It didn't file a petition until August 2, 1971. When it did file the petition, in spite of the doctor's report indicating 50% disability, PMAIC submitted that Silas' disability was undetermined, resulting in termination of payments, rather than reduction in the amount. The termination persisted until December 13, 1971, after the filing of this suit.

There is a temptation to accede to plaintiff's request that we penalize PMIC for its actions, for we are satisfied that PMAIC's actions were designed to "punish" Silas for refusing to sign the Supplemental Agreement. As heretofore noted, nothing in § 413 sanctions pre-petition termination of payments, consequently the pre-petition termination should be regarded as a violation of the section. Further, when the petition was filed, PMAIC's failure to acknowledge Silas' partial disability, as disclosed by PMAIC's own doctor's reports, seems to be totally lacking in good faith. The difficulty with granting the requested relief is that we would be making an unwarranted intrusion into a matter of purely state law. Although we have the power to deal with the state law claim under pendent jurisdiction (United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)) we are reluctant to do so in the absence of state law precedent as to the proper remedy. Where there are deprivations of civil rights under § 1983, we are free to fashion such relief as would vindicate federal rights (see Basista v. Weir, 340 F.2d 74 (3d Cir. 1965)), but we do not have that same freedom for the vindication of purely state rights. We reluctantly conclude that penalty for violation of the state law is a matter for the legislature. At the time of this occurrence, the Pennsylvania legislature had provided no sanctions for such conduct. Since the filing of this suit, the legislature has provided remedies by amendments effective May 1, 1972, for certain pre-petition terminations.[9]

9. 77 P.S. §§ 971, 991. § 971 provides, in pertinent part, that "any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas as provided in this section shall be subject to a penalty as provided in section [991] except in the case of payments terminated as provided in section 434." Footnotes omitted.

§ 991(d) provides, in pertinent part, that "The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable. Provided, however, That such penalty may be increased to twenty per centum in cases of unreasonable or excessive delays."

Plaintiff also seeks an award of counsel fees. Although we commend plaintiff's counsel for the outstanding service they have so competently performed, we believe that an award of counsel fee should reflect the extent to which plaintiff prevailed in the suit. See Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002 (9th Cir. 1972). Because we have determined that plaintiff's complaint lacks merit, an award of counsel fee here would be inappropriate.